IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **CHARITY CHIDINMA EMERONYE SWIFT,** | |
| Plaintiff, | Civil Action No. 1:14-CV-1139 |
| v. | Hon. Judge Liam O'Grady |
| | Hon. Magistrate Judge Ivan D. Davis |
| **FRONTIER AIRLINES, INC. (a Colorado corporation), and JANE DOE,** | |
| Defendants. | |

**FRONTIER AIRLINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS III & IV OF PLAINTIFF'S COMPLAINT**

Defendant Frontier Airlines, Inc. ("Frontier"), pursuant to Federal Rule of Civil Procedure 12(b)(6), submits this memorandum of law in support of its motion to dismiss.

## I.     INTRODUCTION

This case arises out of a $25.00 baggage fee Plaintiff Charity Chidinma Emeronye Swift ("Plaintiff"), a *pro se* attorney, claims she was wrongfully charged due to her race and/or national origin by a gate agent employed by Frontier on September 4, 2013. On September 4, 2014, Plaintiff filed the present complaint, alleging discrimination under 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, as well as claims for defamation and intentional inflection of emotional distress ("IIED") under Virginia law. Her defamation claims are based upon the following alleged statements of the gate agent while they debated whether or not Plaintiff would pay the fee: (1) "Can't you see that I don't care, and I don't want to hear you

say anything more to me again, you pay or I will call the airport security police to come and arrest you."; and (2) "Can someone call me an airport security police?"

In sum, Plaintiff's IIED and defamation claims fail because the alleged emotional injuries and defamatory statements are insufficient to state a cause of action as a matter of law. First, Plaintiff's conclusory allegations that she had suffered "mental anguish and suffering, humiliation, shame, shock, degradation, nightmares and sleeplessness" fail to satisfy the "severity" element of an IIED claim, and the alleged conduct at issue is not sufficiently "outrageous or intolerable" under Virginia law. Second, the purported statements by the gate agent telling Plaintiff that she would call airport security if she did not pay the $25.00 baggage are not defamatory as a matter of law. When reviewed in the actual context in which they were made, these statements cannot reasonably be understood to assert that Plaintiff had committed a crime involving moral turpitude, nor was there anything false about these statements. Truth is an absolute defense. Therefore, dismissal of Counts III and IV of Plaintiff's Complaint with prejudice is warranted.

## II.   STATEMENT OF FACTS

On September 4, 2013, Plaintiff was traveling on Frontier Airlines from Bozeman, Montana ("BZN") to Arlington, Virginia ("DCA") with a stopover in Denver, Colorado (DEN). (Dkt. #1, ¶¶9, 11). While boarding her connecting flight, Plaintiff alleges that a Frontier gate agent told Plaintiff that she would have to pay a $25.00 fee for her carry-on baggage before she was allowed to board. (Dkt. #1, ¶9). Plaintiff claims that all other passengers on her flight to DCA were Caucasian, and Plaintiff, being the only African/African-American on the flight, was the only one asked to pay the $25.00 fee due to her race and national origin. (Dkt. #1, ¶¶19, 20).

After being informed about the fee, Plaintiff proceeded to debate with the gate agent as to why she should not have to pay a $25.00 fee for her carry-on luggage. (Dkt. #1, ¶¶9-12). At some point thereafter, the gate agent allegedly became impatient and angry with Plaintiff and told her, "Can't you see that I don't care, and I don't want to hear you say anything more to me again, you pay or I will call the airport security police to come and arrest you." (Dkt. #1, ¶18). After Plaintiff failed to respond to this statement and started "shaking allover" in anger and humiliation, the agent then allegedly stated, "Can someone call me [sic] an airport security police?" (Dkt. #1, ¶18). Plaintiff alleges that these statements were defamatory. (Dkt. #1, ¶¶41-45). Immediately after these statements were made, no one apparently called security and instead another gate agent again asked Plaintiff if she would pay the fee. (Dkt. #1, ¶18). Plaintiff replied in the affirmative, paid the $25.00, and boarded her flight without further incident. *Id.*

On September 4, 2014, Plaintiff filed the present Complaint, which alleges discrimination claims under 42 U.S.C. § 1981 (Count I) and under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d (Count II), as well as claims for intentional inflection of emotional distress (Count III), and defamation (Count IV) under Virginia law.[1] The present motion is directed only to Counts III and IV of the Complaint.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state

---

[1] As Plaintiff titles Counts III and IV as "Virginia Torts," Frontier assumes, without waiving, that Virginia law applies to the issues raised in Plaintiff's complaint solely for the purposes of the present motion.

a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, defendant-unlawfully-harmed-me accusation." *Id.* at 678. The importance of "evaluat[ing] complaints early in the process" in response to Rule 12(b)(6) motions has been emphasized by the Supreme Court and the Fourth Circuit in as a way to deal with "the recognized problems created by 'strike suits' and the high costs of frivolous litigation." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678-79).

Accordingly, the Federal Rules do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679. Facts that suggest a "mere possibility" or those that are "merely consistent" with misconduct are not enough to survive a motion to dismiss. *Id.* at 678. In evaluating such motions, courts do not credit a plaintiff's "legal conclusions, [recitations of] elements of a cause of action, and bare assertions devoid of further factual enhancement," and must "decline to consider 'unwarranted inferences, unreasonable conclusions, or arguments'" contained in the complaint. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

## IV.  ARGUMENT

**A.  PLAINTIFF'S IIED CLAIM MUST BE DISMISSED BECAUSE FRONTIER'S ALLEGED CONDUCT WAS NOT SUFFICIENTLY "OUTRAGEOUS AND INTOLERABLE" AND PLAINTIFF'S CLAIMED MENTAL DISTRESS FAILS IN SEVERITY AS A MATTER OF LAW.**

In order to properly allege an intentional infliction of emotional distress (IIED) claim, a plaintiff must establish that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable; and (3) the alleged conduct and emotional distress were

causally connected; and (4) the distress was severe. *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 136 (2000). Because emotional distress torts may be "easily feigned without detection," the Virginia Supreme Court has declared that such torts are "not favored" in the law. *Ruth v. Fletcher*, 377 S.E.2d 412, 415 (Va. 1989). As a result, in order to withstand a motion to dismiss an IIED claim, a plaintiff must allege in her complaint all facts necessary to establish the cause of action. *Sewraz v. Nguyen*, 2011 U.S. Dist. LEXIS 5464, at *32-33 (E.D. Va. Jan. 20, 2011); *accord Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006). Whether conduct is "outrageous and intolerable" or whether emotional distress is "severe" are issues of law for the court to decide. *Owens v. Ashland Oil, Inc.*, 708 F. Supp. 757, 760 (W.D. Va. 1989); *Sewraz*, 2011 U.S. Dist. LEXIS, 5464, at *32-33.

As further set forth below, Plaintiff's complaint fails to properly allege that the purported conduct at issue was sufficiently "outrageous and intolerable" and that her emotional distress was adequately "severe," and therefore, dismissal with prejudice of Count III is proper.

### 1. *Plaintiff's Complaint Fails to Allege "Outrageous and Intolerable" Conduct.*

In order to sufficiently allege "outrageous and intolerable" conduct, the conduct must be "intolerable or outrageous such that it 'offends against the generally accepted standards of decency and morality.'" *Ogunde v. Prison Health Servs., Inc.*, 645 S.E.2d 520, 526-27 (Va. 2007) (citing *Jordan v. Shands*, 500 S.E.2d 215, 219 (Va. 1998)). As such, "it is not enough that the defendant acted with tortious or even criminal intent. Nor does liability extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Hatfill v. New York Times Co.*, 416 F.3d 320, 336 (4th Cir. 2005) (applying Virginia law).

Specifically, "it is well-settled in Virginia that allegations of discrimination do 'not rise to the level of outrageousness required' necessary to state an IIED claim." *Long v. Teradata Corp.*, 2012 U.S. Dist. LEXIS 128586, at *14 (E.D. Va. Sept. 10, 2012) (citing *Karpel v. Inova Health Sys. Servs., Inc.*, 134 F.3d 1222 (E.D. Va. 1997)); *accord Law v. Autozone Stores, Inc.*, 2009 U.S. Dist. LEXIS 110445, at *13 (W.D. Va. Nov. 25, 2009) ("Although Defendant Gibson's use of a racial epithet certainly violated well-established norms of etiquette and decency, his conduct was not so extreme as to qualify as 'outrageous and intolerable' under the high bar set by the courts of Virginia." (internal citations omitted)). Further, "[t]he mere accusation of a crime, however, fails to demonstrate outrageous conduct." *Nigro v. Va. Commonwealth Univ. Med. College of Va.*, 2010 U.S. Dist. LEXIS 56229, at *44 (W.D. Va. June 4, 2010) (citing *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 252 (W.D. Va. 2001)); *see also Coles v. Carilion Clinic*, 894 F. Supp. 2d 783, 796 (W.D. Va. 2012) (finding that "allegations in the amended complaint surrounding the use of racially abusive language and symbols and [defendant's] persistence in refusing to promote him while electing to promote white males instead" insufficient to establish "outrageous and intolerable" conduct to support IIED claim).

Here, even when accepting Plaintiff's allegations as true for the purposes of the present motion, the alleged conduct is not sufficiently "outrageous and intolerable" to establish an IIED claim under Virginia law. Plaintiff claims she was racially discriminated against by Frontier by having to pay a $25.00 fee for her carry-on, and that this conduct was "made more extreme" when the gate agent allegedly threatened to call airport security if Plaintiff continued to refuse to pay the fee. (Dkt. #1, ¶39). Such conduct does not rise to the level of "outrageous and

intolerable" as a matter of law, and therefore, dismissal with prejudice is proper. *See, e.g.*, *Nigro*, 2010 U.S. Dist. LEXIS 56229, at *44.

### 2. *Plaintiff's Complaint Fails to Allege Sufficiently Severe Mental Distress.*

Virginia law is clear that the mental distress necessary for an IIED claim must be so severe and debilitating that it causes a "complete disintegration of virtually every aspect of [Plaintiff's] life." *Almy v. Grisham*, 639 S.E.2d 182, 188 (Va. 2007). In other words, "liability arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991). Pertinent here, the Virginia Supreme Court has explicitly "held that a plaintiff complaining of nervousness, sleep deprivation, stress and its physical symptoms, withdrawal from activities, and inability to concentrate at work <u>failed to allege a type of extreme emotional distress that is so severe that no reasonable person could be expected to endure it</u>." *Harris v. Kreutzer*, 624 S.E.2d 24, 34 (Va. 2006) (emphasis added) (citing *Russo*, 400 S.E.2d at 163).

These legally insufficient symptoms are the exact emotional distress Plaintiff alleges here: "mental anguish and suffering, humiliation, shame, shock, degradation, nightmares and sleeplessness resulting in extreme fatigue which impacted on her ability to do her work." (Dkt. #1, ¶39). Thus, the emotional distress Plaintiff claims to have experienced fails the "severity" element of an IIED claim as a matter of law, and therefore, Count III must be dismissed on this basis as well. *Harris*, 624 S.E.2d at 34; *Russo*, 400 S.E.2d at 163; *accord Savage v. Cnty. of Stafford*, 2010 U.S. Dist. LEXIS 44030, at *27 (E.D. Va. May 4, 2010) (same); *Sewraz v.*

*Nguyen*, 2011 U.S. Dist. LEXIS 5464, at *32-33 (E.D. Va. Jan. 20, 2011) (same); *Pacquette v. Nestle USA, Inc.*, 2007 U.S. Dist. LEXIS 33448, at *14-15 (W.D. Va. May 7, 2007) (same).

**B.    PLAINTIFF'S DEFAMATION CLAIM MUST BE DISMISSED BECAUSE THE ALLEGED STATEMENTS WERE TRUTHFUL AND NOT DEFAMATORY, BY INNUENDO OR OTHERWISE, AS A MATTER OF LAW.**

To state a claim for defamation in Virginia, a plaintiff must plead that the defendant: (1) published (2) an actionable statement (3) with the requisite degree of intent. *See, e.g.*, *Marroquin v. ExxonMobil Corp.*, 2009 U.S. Dist. LEXIS 44834, (E.D. Va. May 27, 2009) (citing *Chapin*, 993 F.2d at 1092). To be actionable, however, the statement must be both false and defamatory. *Jordan v. Kollman*, 612 S.E.2d 203, 206 (Va. 2005). Even when considering whether a statement's meaning may be extended by innuendo, Virginia courts have cautiously held that "the meaning of the alleged defamatory language cannot, by innuendo, be extended beyond its ordinary and common acceptation. The province of the innuendo is to show how the words used are defamatory, and how they relate to the plaintiff, but it cannot introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain." *Carwile v. Richmond Newspapers, Inc.*, 82 S.E.2d 588, 592 (Va. 1954). Thus, whether a statement is "actionable" is a threshold determination decided as a matter of law by the court. *Yeagle v. Collegiate Times*, 497 S.E.2d 136, 138 (Va. 1998).

Here, because the statements alleged by Plaintiff are neither false nor defamatory, they are not actionable, and therefore, dismissal of Count IV is warranted.

According to the Complaint, the Jane Doe gate agent defamed Plaintiff by allegedly insinuating that she had committed some sort of unidentifiable criminal offense through the use of these two statements: (1) "I will call the airport security police to come and arrest you"; and

(2) "Can someone call me an airport security police?" (Dkt. #1, ¶42). But "a court may not isolate one portion of the statement at issue from another portion of the statement. Rather, a court must consider the statement as a whole." *Hyland v. Raytheon Tech. Servs. Co.*, 670 S.E.2d 746, 751 (Va. 2009). In doing so, the lengthy narrative of Plaintiff's verbal exchange with the gate agent, as set forth in paragraphs 14 through 18 of her Complaint, is summarized below for proper context:

| | |
|---|---|
| Jane Doe: | "Is this your luggage?" |
| Plaintiff: | "Yes." |
| Jane Doe: | "You have to pay twenty-five dollars before you can board." |
| Plaintiff: | "Why?" |
| Jane Doe: | "I have just told you, you have to pay for your carry-on luggage before I will allow you to board." |
| Plaintiff: | "[My luggage] will fit because the young lady behind [you] had already measured it and found that it was the right size." |
| Jane Doe: | "Don't you understand English that I said you must pay for your luggage before I can let you board this plane, otherwise you are going nowhere." |
| Plaintiff: | "If that was the case, that carry-ons must be paid for, why [were I and my] husband not asked to pay on the whole trip by both United Airlines and Frontier Airlines, until this leg of [our] journey, and why were [we] not told or asked for payment by this young lady (Plaintiff pointed at her), who checked [us] in, gave [us] the thumbs up after measuring it, assigned [us our] seats and gave [us our] boarding passes and told [us we] should go board?" |
| Jane Doe: | "Take your luggage and get out of this line, move over that way." |
| Plaintiff: | "Why [am I] the only one with a boarding pass who is asked to pay $25 before boarding the plane?" |

| | |
|---|---|
| Jane Doe: | "Do you want me to make you pay fifty dollars or do you want to pay twenty-five dollars?" |
| Plaintiff: | "[I] fail to understand why [you are] singling [me] out to pay for [my] carry-on when the rest of the passengers [are] allowed to board without [you] or anyone else asking them to pay before boarding. If I must pay, why are you not asking my husband to also pay because we both have carry-ons, booked same flight together, have exact same boarding passes?" |
| Jane Doe: | "Shut your mouth, I don't want you to talk to me again, I have already told you, if you don't pay, I will make sure you don't board this flight." |
| Plaintiff: | "[T]he matter [is] not paying $25, but the fact that [you're] singling only [me] out to pay, as a condition of [me] boarding a flight [I] had already fully paid for, and after [I] had already been issued a boarding pass (usually, a boarding pass will not be issued to anyone unless one is asked to pay, when appropriate, and after payment has been made) like the rest of the passengers, [does] not make sense to [me], coupled with the fact, that all through the three flights that [I] and [my] husband had already made during the trip, two on United Airlines and one on Frontier Airlines (from Bozeman to Denver) again, [we] were not asked to pay, and suddenly [I'm] singled out to pay for [my] carry-on – same carry-on [I] had on all the flights, as a condition for [me] boarding [my] prepaid flight." |
| Jane Doe: | "Can't you see that I don't care, and I don't want to hear you say anything more to me again, you pay or I will call the airport security police to come and arrest you." |
| Plaintiff: | [No response – Plaintiff begins "shaking all over"]. |
| Jane Doe: | "Can someone call me an airport security police?" |

(Dkt. #1, ¶¶14-18).

The context of these statements is significant, as Virginia courts focus on both "the plain language of the statement" and "the context and general tenor of its message," keeping in mind that the "verifiability of the statement" is a touchstone "because a statement not subject to

10

objective verification is not likely to assert actual facts." *Snyder v. Phelps*, 580 F.3d 206, 219 (4th Cir. 2009). If a statement "cannot reasonably be interpreted as stating actual facts about an individual," it cannot be the subject of a defamation suit. *Schnare v. Ziessow*, 104 Fed. Appx. 847, 851 (4th Cir. 2004) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). And while posing a question can conceivably be defamatory in limited circumstances not present here, "it must be reasonably read as an assertion of a false fact; inquiry itself, however embarrassing or unpleasant to its subject, is not accusation." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1094 (4th Cir. Va. 1993). As such, speech that is "insulting, offensive, or otherwise inappropriate, but constitutes no more than 'rhetorical hyperbole,'" is not actionable. *Yeagle*, 255 Va. at 295-96; *accord Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (affirming order granting motion to dismiss on defamation claims where statements could not be reasonably interpreted as stating or implying actual facts).

In this case, there was nothing false about these alleged statements, by innuendo or otherwise; truth is an absolute defense. *See Freelander*, 734 F. Supp. at 227 ("To the extent plaintiffs are depicted unfavorably, the Court concludes that such depictions are truthful. It is well-settled that in an action for defamation, truth is an absolute defense."). Assuming for purposes of this motion only, that the alleged statements were in fact made, the gate agent was not, as Plaintiff's tortured interpretation presumes, reporting that some unknown crime was committed or that Plaintiff was a criminal. (Dkt. #1, ¶42). Instead, the plain language of the alleged statements, taken in the context in which they were made, clearly arose out of a debate between Plaintiff and the gate agent as to payment of the $25.00 baggage fee, and the reason for potentially calling airport security was, as confirmed by the Complaint, due to her refusal to pay

the fee, not because she was guilty of some unidentifiable crime. (Dkt. #1, ¶18). Against this contextual backdrop, the references to calling airport security are plainly understood as an outpouring of hyperbolic exasperation over Plaintiff's continuing refusal to pay a baggage fee for her carry-on, and not as a literal assertion of fact that Plaintiff was a criminal. *See, e.g.*, *Schnare v. Ziessow*, 104 Fed. Appx. 847, 851-52 (4th Cir. 2004) ("A reasonable reader would . . . recognize this 'accusation' of lying as just an 'expression of outrage.'"). This is also confirmed by the other gate agent's alleged response in not calling security but instead asking Plaintiff again if she wanted to pay the fee, to which Plaintiff finally complied. (Dkt. #1, ¶18).

Further, the Complaint fails to even specify what crime these statements allegedly insinuated, let alone a crime of moral turpitude, which is itself insufficient. *See Freelander*, 734 F. Supp. at 225 (finding that statements suggesting that plaintiff "is subject to criminal investigation" were insufficiently vague to be defamatory, as they did not "accuse [plaintiff] of any act of baseness, vileness, or depravity" required in order to constitute criminal conduct involving moral turpitude). The reason for this failure is simple: no one reported that Plaintiff committed a crime.

In sum, because innuendo "cannot introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain," *Carwile*, 82 S.E.2d at 592, "[a]dopting the attenuated construction that Plaintiff proposes violates the fundamental tenet of Virginia law that limits the extent to which inferences may be used to support a defamation claim." *Compton v. Foster*, 82 Va. Cir. 279, 285 (Va. Ct. App. 2011). "In short, the statements might be offensive [to Plaintiff], but they are not defamatory." *Schnare*, 104 Fed. Appx. at 852; *see also Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 367 (S.D.N.Y. 2008) ("Put simply,

although the conduct of the flight attendant and other personnel alleged in the complaint may have jeopardized the goodwill of a Continental customer, it clearly does not rise to the level of a tort.").

## V. CONCLUSION

WHEREFORE, Defendant Frontier Airlines, Inc. respectfully requests that this Court grant its Motion to Dismiss Counts III & IV of Plaintiff's Complaint with prejudice and grant any further relief the Court deems just and proper.

Dated: October 22, 2014				Respectfully submitted,


						/s/_____
						Sarah E. Moffett (VA Bar No. 72208)
						LECLAIRRYAN, A PROFESSIONAL CORPORATION
						2318 Mill Road, Suite 1100
						Alexandria, Virginia 22314
						Telephone: (703) 647-5930
						Facsimile: (703) 647-5980
						Email: sarah.moffett@leclairryan.com

						- and –

						Paula L. Wegman (*pro hac vice pending*)
						Steven L. Boldt (*admitted pro hac vice*)
						ADLER MURPHY & MCQUILLEN LLP
						20 South Clark Street, Suite 2500
						Chicago, Illinois 60603
						Telephone: (312) 345-0700
						Facsimile: (312) 345-9860
						Email: sboldt@amm-law.com
						Email: pwegman@amm-law.com

						*Attorneys for Frontier Airlines, Inc.*

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on October 22, 2014, I served the following via U.S. Mail, postage prepaid, and via electronic case filing:

  Charity Chidinma Emeronye Swift
  Swift & Swift, Attorneys at Law, P.L.L.C.
  21 Eisenhower Avenue
  Suite 200
  Alexandria, VA 22314

              /s/_____
              Sarah E. Moffett