# EXHIBIT

# 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

_____

| | |
|---|---|
| **CHARITY CHIDINMA** ) | |
| **EMERONYE SWIFT,** ) | |
| ) | |
| **Plaintiff,** ) | **Civil Action No. 1:14-CV-1139** |
| ) | |
| **v.** ) | **Hon. Judge Anthony J. Trenga** |
| ) | **Hon. Magistrate Judge Ivan D. Davis** |
| **FRONTIER AIRLINES, INC. (a Colorado** ) | |
| **Corporation), and JANE DOE,** ) | |
| ) | |
| **Defendants** ) | |

_____)

## <u>AMENDED COMPLAINT</u>

Charity Chidinma Emeronye Swift (hereinafter "Plaintiff"), by her undersigned attorney Stephen

Christopher Swift, and on her behalf, herein alleges the following:

### NATURE OF THE CASE

1.  Plaintiff, a citizen of the United States of America born in the Federal Republic of Nigeria,

and a resident of Fairfax County in the Commonwealth of Virginia, brings this action seeking

declaratory, injunctive, and monetary relief against Frontier Airlines, Inc., and Jane Doe,

("Defendants"), for unlawful discrimination under federal laws, and Defamation, Breach of

Contract, False Imprisonment and Intentional Infliction of Emotional Distress under Virginia

laws. As described in this Amended Complaint, Jane Doe, an agent of Defendant, unlawfully

discriminated against Mrs. Swift, by refusing to allow her, the only African/African-American woman and black person on the flight, to board the plane unless she paid $25.00, even though two different ticketing agents of the Defendant's had already weighed Mrs. Swift and her husband's carry-ons respectively, found them within the required measurement, and issued them their boarding passes without asking them either of them to pay for their carry-ons. Mrs. Swift was told she would not be allowed to travel or board the plane unless she paid. Her husband on the other hand, was not asked to pay for his carry-on. Mrs. Swift believes she was discriminated against, on the basis of her perceived race, color, ethnicity, alienage, ancestry, and/or national origin.

2. As it turned out, and as Mrs. Swift later discovered after filing her initial Complaint, Defendants breached their own "Contract of Carriage," when they charged Mrs. Swift for her carry-on, because, according to their own policy, only passengers who purchased a "Basic" ticket through third parties, were required to pay for their carry-on – economy ticket holders were allowed to board free with their carry-ons. Although Mrs. Swift and her husband purchased their ticket from a third party, their ticket, was "Economy" and not "Basic." Also, according to Defendant's own policy, as posted on their own website, carry-on fees for "Economy" ticket holders came into effect on April 28, 2014 and Mrs. Swift and her husband bought their ticket and travelled in August/September, 2013. Hence, Mrs. Swift was not required to pay for her carry-on and Defendants had no right or justification to charge her any fees for her carry-on, in the first place. **See Attached Exhibits A-H.** Defendants also breached their own policy and "Contract of Carriage" Rule 35 – Refusal to Transport, when Jane Doe, unlawfully, without just cause detained, and refused to allow Mrs. Swift to board the plane, and in fact, restricted her

ability and freedom to board the plane against her will and her rights, without just cause or justifiable reason. **See Attached Exhibit I.**


3**.** Jane Doe was emphatic that Mrs. Swift will not board the plane, or travel on Frontier Airlines unless she paid $25.00. She also backed that emphasis up with the threat of calling for Mrs. Swift's arrest, and in fact, did carry out that threat by calling for the airport security police to come and arrest Mrs. Swift, even though she knew Mrs. Swift had done nothing wrong, and that such actions were unlawful because they were not warranted by any standard, in the circumstances. When Jane Doe made good on her threat by calling for the security to come and arrest Mrs. Swift, Mrs. Swift, out of intimidation by Jane Doe, and fear that she will be arrested, handcuffed by the airport security, and locked up, paid the $25.00 demanded by Jane Doe, even though she did not know why she was paying it, because Jane Doe refused to answer her questions, or explain to her why she was being charged such fees, especially when her own husband who was similarly situated, was not asked to pay any fees, even at the prompt of Mrs. Swift asking Jane Doe, why her husband was not also asked to pay.


4.  Defendant's agent Jane Doe, allowed Mrs. Swift's husband, who is Caucasian male, and similarly situated or in the same boat, because they had same ticket (they bought their ticket together, were checked in together, and issued boarding passes and seats together, to board the plane). When Plaintiff asked why her husband was not charged as she was, she was given no answers. Defendants treated Plaintiff differently from her husband who is a white Caucasian, and all other white passengers who were allowed to board the plane without more, who Mrs. Swift

watched board as she asked by Jane Doe, to step aside from the line.  When Mrs. Swift asked

why she was asked to pay for carry-on after she had already been checked in, her carry-on

measured and approved, and issued a boarding pass, Jane Doe never gave Mrs. Swift any reason

or explanation. Instead, Jane Doe used insulting words, bullied, intimidated, threatened to call

the airport security police to arrest Mrs. Swift, and indeed, did carry out that threat by asking

someone to call the airport security police to arrest Mrs. Swift.  Defendants' actions were hostile,

willful, intentional, reckless, and in violation of 42 U.S.C. § 1981 as amended by the Civil Rights

Act of 1991; Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d.  By Jane Doe's actions,

Defendants caused Mrs. Swift, Serious Infliction of Emotional Distress because after the

incident, Mrs. Swift felt humiliated, vilified, traumatized, and emotionally stressed and she

suffered lingering nightmares, sleeplessness and fatigue that affected the level of energy she used

to have and needed to do her work. The experience was a very painful one for her.


5.  By calling the security police to come and arrest Mrs. Swift, Defendant's agent defamed Mrs.

Swift as she impugned on Mrs. Swift's reputation by innuendo, insinuation, or implication, that

Mrs. Swift has either committed a crime, or was in the process of committing a crime, was a

security threat to other passengers or Frontier's staff, or was a security risk given that Jane Doe

told Mrs. Swift in the presence of other passengers, that she was not going to let Mrs. Swift

board the plane, and given the genuine reasons for heightened security these days, at America's

airports and or that Mrs. Swift has disturbed or was disturbing the peace, or has acted in any

manner, necessitating a call for the security police or warranting her arrest in the circumstances.

Jane Doe also knew that what she was doing was not warranted and was unlawful, yet she acted

as she did, without any care or regard as to how it would affect Mrs. Swift or her rights.

Defendants breached their own Contract of Carriage when they failed to follow their own policies regarding carry-ons and also, when they failed to follow their own rules regarding refusal to transport a passenger. By detaining Mrs. Swift and preventing her to board the plane against her will and for no lawful cause, Defendants Falsely Imprisoned Mrs. Swift because their agent restricted her freedom to board the plane without just cause under Virginia's Law.

6.  In addition to seeking compensatory and punitive damages, plaintiff seeks declaratory and injunctive relief requiring defendant to desist from and remedy such discriminatory action.

## JURISDICTION AND VENUE

7.  The court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(4) and 1367. Plaintiff's action for damages, punitive, declaratory, equitable and other monetary relief is authorized by 28 U.S.C. §§1343(a)(4), 2201, 2202 and 42 U.S.C. Section 1981a(b)(1). Venue is proper in the U.S. District Court in the state of Virginia under 28 U.S.C. § 1391 because the events giving rise to these claims arose from defendant doing business in Virginia (Reagan Washington National International Airport), and Plaintiff resides in Virginia.

## INTRODUCTION

8.  Plaintiff brings this civil rights lawsuit to ensure that the mandate that everyone in this country is treated equally, as embodied and guaranteed in federal and state anti-discrimination laws, does not become meaningless when the rights of persons perceived to be African, African-

American, Black or non-Caucasian Americans are affected. The aftermath of the horrific events of September 11, 2001, has seen a rise in incidents of discrimination by airlines against non-Caucasian citizens of the United States. Airlines like Frontier and their agents have invariably pretended and hidden behind security and safety arguments even in circumstances where their actions clearly have nothing to do with anything close to, or relating to the security or the safety of anyone. Some airlines and their agents have used the genuine fear and need for security and safety of travelers to foster and carry out their personal bigotry and racist intentions. They have done so, and continue to do so, despite President Bush's admonition during his address to Congress following the attacks that "no one should be singled out for unfair treatment or unkind words because of their background or religious faith." They have also ignored Attorney General Ashcroft's plea that "we must not descend to the level of those who perpetrated Tuesday's violence by targeting individuals based on their race, their religion, or their national origin."

9.  Several federal laws expressly prohibit airlines from discriminating against an individual because of that person's race, color, national origin, religion, sex, or ancestry. Specifically, 49 U.S.C.  § 40127(a) provides that an "air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry," 49 U.S.C.  § 41702 requires that U.S. carriers provide safe and adequate transportation, and 49 U.S.C.  § 41310 prohibits air carriers and foreign air carriers from unreasonably discriminating against any person in foreign air transportation. Finally, 49 U.S.C. § 41712 prohibits unfair and deceptive practices by air carriers. As the Department of Transportation noted in its Consent Order against United Air Lines, Inc., Docket OST-2011-0003, November 1, 2011,"each of these provisions has been interpreted to prohibit air carriers

from discriminating on the basis of race, color, national origin, religion, sex, or ancestry. See American Airlines, Inc., OST-2003-15046-18 (August 21, 2003) and United Air Lines, Inc., Order 2003-11-13 (November 19, 2003). As exemplified by its numerous Consent Orders against several airlines, the Department of Transportation, pursuant to aforementioned federal laws have made clear to airlines that discrimination against persons solely on the basis of their race, color, national origin, religion, sex, or ancestry, is prohibited. Nevertheless, airlines like defendant, egregiously and recklessly continue to discriminate against persons on the basis of their race, color, national origin, religion, sex, or ancestry, in violation of federal and state civil rights, without regard to the individual's rights, as they did to Plaintiff.


10.  This suit is brought in response to one such egregious and reckless incident. In an overt and blatant act of racial discrimination, Plaintiff Charity Chidinma Emeronye Swift, a woman, an American citizen of African descent, was denied her right to board the plane at the gate, after defendant's agents had already issued her and her Caucasian husband (both attorneys), their boarding passes and cleared them for boarding, until she paid twenty-five dollars ($25.00) for her carry-on luggage, even though no one else including her husband who checked in while she was detained, was asked to pay for their carry-ons as Mrs. Swift was asked. Two of Defendant's ticketing personnel had already measured Mrs. Swift's carry-on, found it met Frontier's required measurement and gave her and her husband their boarding passes without asking them to pay for their carry-ons.

11. When Mrs. Swift arrived at the boarding gate and when it was her turn to board, she stood in line. It was at this time, that Frontier's agent who suddenly appeared at the gate (name unknown and designated "Jane Doe" in the caption of this case) threatened, degraded, intimidated vilified and humiliated Mrs. Swift, telling her she was going to call the airport security office to arrest her and she in fact, did – she yelled out over the heads of everyone at the gate and surrounding gates, "can someone call the airport security police for me." Frontier's agent Jane Doe's actions had no basis and were unwarranted, as Frontier's Customer Relations person Mrs. Swift complained to few days later, agreed with Mrs. Swift. Plaintiff brings this suit to make sure that Frontier and its agent, is made accountable for their unlawful actions, and to ensure that no one in the future is subjected to the same kind of unlawful, humiliating and degrading treatment by Mrs. Swift received in the hands of Frontier and its agent.

## PARTIES

**Plaintiff**

12.  Plaintiff Charity Chidinma Emeronye Swift, is a black woman, a citizen of the United States of America, and a citizen and resident of the Commonwealth of Virginia. She is a native of the Federal Republic of Nigeria in West Africa. Charity Chidinma Emeronye Swift has an L.L.B. from the University of London and a L.L.M. from DePaul University, and has been admitted to the bar in New York. She is an attorney and a member of the law firm, Swift & Swift, Attorneys at Law, P.L.L.C. where she works with her husband Stephen Christopher Swift (a Caucasian), also a member and attorney of the firm.

**Defendants**

13.  Defendant Frontier Airlines, Inc. ("Frontier Airlines") is an air carrier engaged in the business of transporting passengers.  It is incorporated in Colorado.  Its corporate headquarters is located at: 7001 Tower Road, Denver, Colorado 80249.  Defendant Jane Doe is an employee of Frontier Airlines whose name is unknown.

14.  In February 2003, Frontier Airlines, Inc. received about seventy million dollars ($70,000,000.00), in federal financial assistance from the U.S. Department of Transportation, pursuant to sections 101 and 103 of the Air Transportation Safety and System Stabilization Act, P.L. 107-42.

## FACTS GIVING RISE TO THIS ACTION

15.  In August 2013, a father and son, both clients of Plaintiff's husband, invited Plaintiff and her husband to the wedding of the son/client. Plaintiff and her husband accepted the invitation. Despite their workload, Plaintiff and her husband managed to eke out time and planned to use that opportunity to visit Yellow Stone National Park, which they had never seen before. On August 19, 2013, Plaintiff and her husband booked two-way return flights, through their travel agent, Air World Travel, from Ronald Reagan Washington National Airport, in Arlington, Virginia, ("Reagan Airport") to Bozeman Airport, in Bozeman, Montana (Bozeman), and back to Reagan Airport. The flight from Reagan Airport to Bozeman Airport was on United Airlines. The flight from Bozeman Airport to Reagan Airport, was on Frontier Airlines, Inc. There was a stopover at Denver Airport with both flights.

16.  Plaintiff and her husband had a total of two pieces of luggage - one carry-on luggage each.
They were told by their booking agent that carry-ons were free. This was confirmed when they
arrived at the appointed date, at Reagan Airport, and United Airlines did not charge them for
their two carry-on pieces of luggage. They had a no-hassle flight to and safely arrived at Denver
Airport. They departed Denver Airport, at 9:55 pm, and again, there was no charge for their two
carry-on pieces of luggage, and they checked in with their carry-ons like the rest of the travelers
on their flight. They had a no-hassle trip from Denver Airport to Bozeman on United Airlines.
They attended the wedding, which was beautiful and had a wonderful time. They also spent a
couple of days sightseeing nature's wonders, including the Old Faithful Geyser, one of the most
spectacular and glorious gifts nature has given America, that never failed to entertain by keeping
exact time! Their trip was magnificent, and seeing Yellow Stone made it a once in a lifetime trip,
and one that especially left Plaintiff with a glorious sense of awe, appreciation and unbridled joy,
until Frontier Airlines' agent Jane Doe, at the Denver airport boarding gate, snuffed all that from
Plaintiff, by her unlawful discriminatory treatment of her, and left her an emotional wreck.


17.  On September 4, 2013, Plaintiff and her husband, joyfully and gratefully bid farewell to their
hosts, Yellow Stone National Park, and the state of Montana. Plaintiff and her husband arrived at
Bozeman Airport and went to the Frontier's counter to check in and obtain their boarding passes
to Denver Airport. Defendant's ticketing agents at the Bozeman Airport checked them in, with
their two pieces of carry-on luggage and handed them their boarding passes without more. They
were not asked to pay anything for their carry-ons, and so they paid no charges, just like others,
who were not asked to pay anything when they checked in as they did, with only carry-on

luggage. At the boarding gate, Plaintiff and her husband presented their boarding passes as was required and as everyone did, and were allowed to board the plane, again, with their carry-on which was stowed in the overhead cabin of their assigned seats. Mrs. Swift and her husband's flight on Frontier Airlines, from Bozeman to Denver Airport, was a no-hassle flight. They arrived safely without any incident and again, they went to the Defendant's counter for their final check in for the trip to Reagan Airport.

18.  When Mrs. Swift and her husband arrived at Frontier Airline's Denver counter to check in and get a boarding pass for the flight to Reagan Airport, the younger (Plaintiff presumes) of two of Frontier Airline's ticketing personnel, asked both Plaintiff and her husband whether they had any luggage to check in. Plaintiff and her husband answered, "No!" All they had was their carry-on luggage. The young lady then asked to see their carry-ons. Plaintiff and her husband showed the lady their two pieces of carry-on luggage. She asked Plaintiff and her husband to place, their luggage one at a time, into a metal measuring box to ensure that they had the right size of carry-on. Plaintiff and her husband complied, and each carry-on luggage was certified as within the carry-on luggage size for the purpose of fitting into the overhead cabin. After measuring each luggage, she gave Mrs. Swift and her husband "thumbs up" and said, here you go, and handed them their boarding passes (without asking them to pay for their carry-ons because there was no reason to do so whatsoever, so they paid nothing, as they had done so far, to that point, on both their trip over to and back from Montana). The young lady further advised them on the appropriate gate to board their plane for Reagan Airport. They thanked her and proceeded to the gate for boarding.

19.  Mrs. Swift and her husband arrived at the boarding gate and waited for a while before boarding began, and until their "zone" – zone 2 – was announced for boarding. The flight was a completely full flight and their boarding gate was A38. Gate A38 and the surrounding gates were full of travelers waiting in their respective boarding gates. When zone 2 was called for boarding, Plaintiff and her husband fell in line. There were fewer than four people in front of them. Plaintiff was in front of her husband in the line, and each was carrying their own carry-on. The two young women who earlier, checked them in and gave them their boarding passes, were at the gate letting people on-board. However, as Plaintiff was next in line, and just as she stretched her hand to hand over her boarding pass to one of the two young women, another woman ("Jane Doe") who was definitely older than the two young ladies that dealt with Plaintiff and her husband earlier, appeared and said, "give it to me", i.e. Mrs. Swift should giver Jane Doe her boarding pass. It happened so fast that Jane Doe basically snatched Mrs. Swift's boarding pass out of her hand.

20.  When Jane Doe took the boarding pass from Mrs. Swift's hand, instead of tearing and giving Mrs. Swift the assigned seat coupon part of it, as they were doing with other passengers, and let her pass to board the plane like others before her, Jane Doe, looked at Mrs. Swift and her carry-on and asked, "Is this your luggage?" Mrs. Swift answered "yes". Then Jane Doe said to her, "You have to pay twenty-five dollars before you can board." Mrs. Swift responded and asked her why she had to pay? Instead of explaining to Mrs. Swift what the fees was for, Jane Doe loudly, rudely and dismissively replied, "I have just told you, you have to pay for your carry-on luggage before I will allow you to board." Perplexed and thinking that Jane Doe thought her carry-on will not fit into the overhead cabin, and that that, was the reason Jane Doe was asking Mrs. Swift to

pay for it, because she was going to tag it and check it into the plane cargo hold as most airlines do free of charge, and as Mrs. Swift is familiar with, so that she would not have to take it in with her, Mrs. Swift explained to Jane Doe that it will fit into the cabin, because the young lady behind her had already measured it and found that it was the right size. Jane Doe then raised her voice in anger and said to Mrs. Swift, "don't you understand English and that I said you must pay for your luggage before I can let you board this plane otherwise you are going nowhere." At that point, everyone's attention was alerted and they were all now looking at Mrs. Swift as Jane Doe was yelling at her and bullying her in front of her husband and all the other passengers there, and around the adjoining gates, as if Mrs. Swift had done something wrong when in fact she did no such thing. As surprised, confused and furious as her husband was, he kept his self-control and said nothing as his wife's ordeal continued. Even Plaintiff's husband's high exercise of control and decorum in the face of Jane Doe's horrible treatment of his wife, did not faze Frontier's Jane Doe after she knew that Stephen Swift, the man standing behind Mrs. Swift, was her husband.

21. Mrs. Swift then asked Jane Doe, if that was the case, that she must pay for her carry-on, why was she and her husband not asked to pay on the whole trip by both United Airlines and Frontier Airlines, until that last leg of their journey, and why were they not told or asked for payment by this young lady (Plaintiff pointed at her), who checked them in earlier, gave them the thumbs up after measuring their carry-ons, gave them their boarding passes and told them to go board the plane? Jane Doe angrily waived Mrs. Swift off with her left hand and said, "Take your luggage and get out of this line, move over that way" (pointing to her left). All this time, Mrs. Swift's husband was standing right behind her with his own carry-on luggage, quietly watching what

was going on without saying a word. Jane Doe, who continued tormenting Mrs. Swift, said

nothing to her husband, and did not ask to see his boarding pass, or ask him to pay for his carry-

on luggage.


22.  As Mrs. Swift and her husband moved aside, and off from their now boarding line, Mrs.

Swift watched everyone else boarding without being asked to pay for their luggage before

boarding. So, she asked Jane Doe, why was she the only one with a boarding pass who is asked

to pay $25 before boarding the plane? She turned at Mrs. Swift and angrily threatened, "do you

want me to make you pay fifty dollars ($50) or do you want to pay twenty-five dollars ($25)?"

Mrs. Swift explained to Jane Doe that she failed to understand why she was singling her out to

pay for her carry-on when the rest of the passengers were allowed to board without Jane Doe or

anyone else asking them to pay before boarding. Mrs. Swift then asked Frontier's agent, "If I

must pay, why are you not asking my husband also to pay because we both have carry-ons,

booked same flight together, have exact same boarding passes?" Jane Doe then became irate and

yelled at Mrs. Swift and said, "Shut your mouth, I don't want you to talk to me again, I have

already told you, if you don't pay, I will make sure you don't board this flight." Mrs. Swift

further explained to her that the matter was not paying $25, but the fact that she was singling her

out to pay, as a condition of her boarding a flight she had already fully paid for, and after she had

already been issued a boarding pass (usually, a boarding pass will not be issued to any passenger

if that passenger is required to pay for their carry-on or luggage, before boarding, until after

payment has been made) like the rest of the passengers, did not make sense to her, coupled with

the fact, that all through the three flights that she and her husband had already made during the

trip, two on United Airlines and one on Frontier Airlines (from Bozeman to Denver), no one

14

asked them to pay, even at Frontier's check in counter, on that stopover, until Jane Doe showed

up at the boarding gate and suddenly singled out Mrs. Swift to pay for her carry-on – same carry-

on she had on all the flights, as a condition for her boarding her prepaid flight and final leg of her

journey.

23.  At this point, Jane Doe got terribly angry at Mrs. Swift, and was so irate that, with the

loudest voice that she could muster, turned to Mrs. Swift and shouted: "Can't you see that I don't

care, and I don't want to hear you say anything more to me again, you pay or I will call the

airport security police to come and arrest you." At this time, the anger, embarrassment and

humiliation Mrs. Swift was feeling because of the way she was singled out and treated so

unfairly, and without any justifiable reason, turned to fear. Mrs. Swift feared that Jane Doe, was

so obviously full of hatred for her (even though she had never seen or met her before, and hardly

knew her), could actually call the police to arrest her, even though she had not disturbed the

peace, broken any law, and certainly was not a security or safety risk to the airplane, anyone

boarding it, or anyone around the gate or anywhere for that matter and has not done anything

against anyone including Jane Doe, that warranted her calling for Mrs. Swift's arrest. Suddenly

Mrs. Swift's heart started pounding and racing, and she started shaking all over. Mrs. Swift tried

to recover and get hold of herself. But before she could, as if Jane Doe, who was bullying and

tormenting her sensed that her horrible, abusive and intimidating actions towards Mrs. Swift has

affected her emotionally, and that she was hurting, yelled out on top of her voice, "Can someone

call me an airport security police?" This was knowingly intentional and hostile but it was clear

that Jane Doe relished her treatment of Mrs. Swift and the effect it was having on her, even

though she knew or must have known that it was not warranted or justified by any account. As

Mrs. Swift looked at, and turned from her husband, her eyes caught the young lady who issued

them their boarding passes. She was flushed and looked terrified herself as Mrs. Swift was. As

their eyes met, as if she wanted to tell Mrs. Swift something, she invitingly and almost in a

whisper, asked Plaintiff: "do you want to pay now?" Mrs. Swift replied "yes". And gave the

young lady her credit card. As she took payment she whispered her apologies to Mrs. Swift,

telling her that she was a new employee and that she was sorry that she could not do anything.


24.  All Jane Doe's actions towards Mrs. Swift happened in front of everyone in line at the gate,

and the surrounding gates. Jane Doe singled her out because she was a black woman of a

different national origin, in a place Jane Doe felt she had no business being - where everyone

else was white and she ridiculed Mrs. Swift because of Jane Doe's perceived accent of Mrs.

Swift that she did not like. When Jane Doe realized that the white man behind Mrs. Swift was

her husband, it infuriated her even more, as it was visibly apparent on her face and the way she

looked down on both Mrs. Swift and her husband. She rudely and angrily bullied, intimidated,

threatened and defamed Mrs. Swift by innuendo when she yelled out for someone to call the

airport security police to arrest her, even though she knew Plaintiff had done nothing illegal and

was not a flight risk by any imagination or standard and that Mrs. Swift had not behaved in

anyway unlawful, she did not behave in anyway disorderly, or disturbed the public peace

warranting her arrest by the airport police. By calling for the police, Jane Doe insinuated that

Mrs. Swift was a flight risk, had committed a crime, or was disturbing the peace or had behaved

in a disorderly manner warranting police presence and action. Frontier's agent knew her

insinuations were false, yet she recklessly made the statement without regard to Mrs. Swift's

rights and the effect it will have on her. In this country, people do not call the police to come and

arrest someone in front of the public if they have done nothing wrong. No one in this country has

the right to call the police to arrest someone because they are angry someone asked them

questions, or even debated with them on a subject. Were that to be the case, then the notion of

freedom of speech in America, would mean nothing.

25.  Jane Doe was hostile to Mrs. Swift. She unlawfully and intentionally, with malice, set out to

discriminate, intimidate, humiliate, ridicule, and inflict emotional distress on Mrs. Swift, and in

fact, did so, because she was a black woman and an African and of a different national origin as

the rest of the passengers, including her own husband who is a Caucasian. Jane Doe hated Mrs.

Swift because of who she was, her color, and her national origin, and treated her unfairly with

unprovoked hatred and malice. Jane Doe's treatment of Mrs. Swift was so abhorrent to Mrs.

Swift. She felt threatened, intimidated, humiliated, degraded and vilified. Jane Doe unlawfully

and intentionally discriminated against Mrs. Swift and this made her very sick in her stomach,

because she could not understand why and where such hate came from this woman she had never

met in her life, because she did nothing to her or anyone to warrant such treatment, except for her

being a Black African woman and of a different national origin from her and the rest of the

people on that flight, including her own husband, and because Jane Doe could not stand Mrs.

Swift's perceived accent.

26.  After Plaintiff paid, she and her husband were allowed to board the plane after everyone else

had. Although Mrs. Swift's husband was allowed to board by Jane Doe, for reasons that she did

not explain, Mr. Swift did not board the plane, he stood with his wife and they boarded the plane

together after everyone had been allowed to board the plane. From the time her ordeal began, she watched while all other passengers, including her own husband, were allowed to board, without being asked to pay and did not pay for their carry-ons. She was the only one who was asked to pay.  Jane Doe was incensed when Plaintiff told her that Stephen was her husband and questioned why he too was not asked to pay as a condition for boarding the plane. Not only was Mrs. Swift the only person who was asked to pay while she was standing there and watching, she was the only Black, African and/or African American passenger onboard that airplane. The rest of the passengers on that airplane were all white Caucasian men and women, including her husband.

27.  By the time Plaintiff and her husband boarded the plane, she was very distraught and as she sat in her seat, she cried her heart out. She felt devastated by the thought that she could have been arrested, had someone called the police as Jane Doe requested, taken away in front of everybody at the gate, and adjoining gates, perhaps in handcuffs as a criminal, even though she did nothing wrong, but just because she was a black and an African woman. She thought of the detrimental effect such news of her being arrested and/or detained by police at the airport would have on her reputation and her legal career, and how it would have caused her husband unnecessary and unwarranted anguish. These thoughts became the beginning of a lingering nightmare and sleeplessness that she suffered for a long time after, as a result of the incident.

28.  As Plaintiff walked through the isle to her assigned seat and just as she was about to sit down, a Frontier Airlines flight attendant in her uniform who was seated behind her seat, but was

not part of the crew for the flight, who saw her crying, asked if she was O.K. She answered, "No!" That flight attendant asked Mrs. Swift what the matter was, and Mrs. Swift explained her ordeal to her. The flight attendant told her that what Jane Doe did was awful and that she did not understand why Jane Doe asked Mrs. Swift to pay for her carry-on. She apologized to Mrs. Swift, but told her that she cannot do more for her because she was not on duty.

29.  On returning home, the next day or so, Mrs. Swift called the Frontier Airlines Customer Complaint line and complained about her ordeal at the hand of one of their employees. The lady she spoke to, took her e-mail address and promised to report and/or investigate the matter and get back with her. She in fact, did write Mrs. Swift after a week or so, but all she did was apologize, and no explanation was given to Mrs. Swift as to why their employee singled out a black woman and made her boarding a flight that she fully prepaid for, conditional on her paying a $25 carry-on luggage fee, when no one else who was white Caucasian, including her own husband, was charged such fee as a condition for boarding. Now as it turned out and as Mrs. Swift later discovered after she filed her Complaint, she should not have been asked to pay any fees for her carry-on and because Frontier's carry-on policies as regards passengers who bought their ticket from third party travel agent, at the time Mrs. Swift and her husband purchased and used their ticket, did not apply to passengers whose ticket was "Economy" but to those with a "Basic" ticket, and Mrs. Swift and her husband's ticket was "Economy" ticket as the attached **Exhibit A** shows.

30.  By the time Plaintiff and her husband arrived home from their trip, her ordeal in the hands of Defendant's employee Jane Doe, cast a depressing cloud over Plaintiff's memorable happy experiences of the wedding they attended that took them to Montana in the first place, and the once in a lifetime experience she and her husband shared of the Yellow Stone National Park wonders, including watching Old Faithful deliver its magic at the appointed time. Plaintiff spent the rest of the year having nightmares about what happened and what could have happened to her had the airport police arrested her. This recurring nightmare, coupled with sleepless nights as the whole episode kept playing repeatedly in her head, and keeping her awake, not only made her feel humiliated and vilified, it also sapped her of energy that she needed to carry out her job as a lawyer.

31.  Plaintiff and her husband have been badly affected by this incident. The experience left Plaintiff's husband with a deep sense of disgust, anger and frustration, as he watched helplessly because he did not want to escalate matters, while Defendant's employee Jane Doe discriminated against his wife because she was a black African woman, married to a white man, and of a different national origin. To wit, the thought of the whole ordeal that in 2013, in America, a person could harbor such intense hate in their minds against another, solely on the basis of their skin color, background and national origin was shocking and terrifying to Mrs. Swift.

## REQUISITES FOR RELIEF

32.  By reason of Plaintiff's factual allegations as set forth above, there is actual controversy between Plaintiff and Defendants. A declaration from this court that Defendant Frontier Airlines,

Inc., and its agent Jane Doe's actions, violated Plaintiff's rights is therefore necessary and appropriate.

33.  Defendants' continued discriminatory conduct will result in irreparable harm to plaintiff, including but not limited to violations of her legal rights. Plaintiff has no adequate, or complete remedy at law to address the most invidious wrong described herein.  Plaintiff therefore seeks injunctive relief restraining Defendants from engaging in the unlawful acts and practices described above.

## CLAIMS FOR RELIEF

### COUNT I: 42 U.S.C. § 1981 DISCRIMINATION IN THE MAKING AND ENFORCEMENT OF CONTRACTS

34.  Plaintiff re-alleges paragraphs 1 through 33 and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

35.  Section 1977 of the Revised Statutes, 42 U.S.C. Section 1981 as amended guarantees all persons the same right to make and enforce contracts as non-African-Americans. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of contractual relationship.

36. The gate agents for Frontier Airlines Flight #720 on September 4, 2013, were at all relevant times, agents and/or employees of Defendant Frontier Airlines, Inc.

37. Defendant is liable for the unlawful acts of its agents and employees directly and/or under the doctrine of *respondeat superior*.

38. Defendants engaged in intentional discrimination based on Mrs. Swift's perceived race, color, ethnicity, and/or origin, in singling her out and making her paying for her carry-on a condition of her boarding the airplane even though others who were all white, were not asked to pay including Plaintiff's own husband, and even though Plaintiff had been issued a boarding pass and told she was OK for boarding just like the rest of the passengers on same flight #720 on September 4, 2013. In so doing, Defendants discriminated against Plaintiff in the making and enforcement of her contract with Frontier Airlines, her prepaid ticket to travel on Frontier Airline Flight #720 on September 4, 2013. Consequently, Defendants' unlawful actions have caused Plaintiff to suffer deprivation of her right to make and enforce contracts as enjoyed by white citizens under 42 U.S.C. § 1981.

39. Defendants' actions were intentional, malicious, willful, wanton, and showed a callous, reckless disregard for Plaintiff's civil rights, and have directly and proximately caused Plaintiff financial injury and humiliation, degradation, mental anguish, pain, and suffering.

## COUNT II: TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000D)
### Discrimination by Recipient of Federal Financial Assistance/Funding

40.  Plaintiff re-alleges paragraphs 1 through 39 and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

41.  Defendant Frontier Airlines is a recipient of federal financial assistance, and so, is covered by Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000D). Title VI and its implementing regulations prohibit recipients of federal assistance and monies from discriminating on the basis of, among other things, race, color, or national origin. Plaintiff is a black African and Defendants discriminated against her because of her race, color and national origin. Defendants' actions in treating Plaintiff, who is black, so brazenly different from other passengers on flight #720, who were all white, including her own husband, on the basis of Plaintiff's perceived race, color, and/or national origin, constitute discrimination against Plaintiff in violation of Title VI and its implementing regulations.

42.  Defendants' actions were intentional, malicious, willful, wanton, and showed a callous, reckless disregard for Plaintiff's civil rights, and have directly and proximately caused Plaintiff financial injury and humiliation, degradation, mental anguish, pain, and suffering.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## (VIRGINIA TORT)

43.  Plaintiff re-alleges paragraphs 1 through 42 and incorporates them by reference as though

fully stated herein as part of Count III of this Complaint.

44.  Defendants' extreme and outrageous conduct, as described herein above, was done with

intent to cause, or with reckless disregard of the probability of causing Plaintiff to suffer severe

emotional distress in the form of mental anguish and suffering, humiliation, shame, shock,

degradation, nightmares and sleeplessness, resulting in extreme fatigue which impacted on her

ability to do her work, by diminishing the level of energy that she used to have prior to her ordeal

with Defendant's employee, when she was able to sleep well without having nightmares about

the incident. Defendants' conduct was made more extreme when Jane Doe called out for

someone to call the airport security police to arrest Plaintiff in front of all the passengers at the

gate and the adjoining gates. Also, even after Plaintiff tried to point out to her that her conduct

was discriminatory against her because of her race, by asking why her husband who was white

was not asked to pay, and why other passengers were not asked to pay, she paid no heed. She

simply carried on tormenting Plaintiff, with impunity. Defendants' intentionally and and/or

recklessly caused Plaintiff emotional distress.

45.  As a proximate result of Defendant's extreme and outrageous conduct, Plaintiff suffered

humiliation, mental anguish, emotional and physical distress, and has been injured in mind and

body in degrees and amounts to be determined at trial. The conduct of Defendant mentioned

herein, were willful, reckless, malicious, oppressive, and done with a callous and reckless disregard for Plaintiff's rights and the consequences that were certain to occur, and thus, justify an award of exemplary and punitive damages against Defendants.


## COUNT IV:  DEFAMATION (VIRGINIA TORT)
### By Innuendo, Inference, Implication or Insinuation


46.  Plaintiff re-alleges paragraphs 1 through 45 and incorporates them by reference as though fully stated herein as part of Count IV of this Complaint.


**The Defamatory Statements**

47.  The two defamatory statements upon which this defamation claim is based are Defendant's employee's statements, made by yelling out on top of her voice and saying: "… I will call the airport security police to come and arrest you" and, "can someone call me an airport security police?" These statements were published to everyone present at Gate A38 and adjourning gates. The airport was teaming of passengers waiting to board their flights. By raising her voice unreasonably loud, Defendant's employee, intentionally wanted everyone to hear her and intentionally called the attention of everyone around to look at Plaintiff and know she was calling the police for Plaintiff. By this statement, Defendants disparaged Plaintiff by insinuating in that statement that Plaintiff has committed a crime, is disturbing the peace, or was a security threat to travelers, Frontier Airlines, Inc., its employees and crew, and the airport, even though Jane Doe knew all these to be utterly untrue and false.

**The Statements' Defamatory Meanings**

48.  The statements were reasonably susceptible to three levels of false and defamatory meanings, constituting "defamation per quod" or defamation by innuendo, insinuation, inference or by implication: (1) that Plaintiff had committed a crime; (2) that Plaintiff was disturbing public peace; and (3) that Plaintiff was a security risk.

49.  Defendant Frontier Airlines' employee Jane Doe knew or should have known that calling the airport security police to arrest a passenger, in an American airport, in view of the horrific incidents of 9/11, will automatically stir a sense of fear into people and that the call for an Airport security police commonly will be interpreted by those who hear it to mean: a person must have committed a crime, is breaching the public peace, or is a security risk needing the security police to deal with the matter. To those who heard the statements and looked at Plaintiff and knowing that Plaintiff was the person for whom Jane Doe was calling the security police, would have interpreted it as disparaging and a negative aspersion on Plaintiff's character. Jane Doe's statements were made so loud that it was clear that she intended all passengers present and anyone close by to the gate and the adjourning gates to hear it.

**Falsity of the Statements**

50.  At the time the Defamatory Statements were made and published, Defendant Frontier Airlines' employee Jane Doe knew it was false, and that she had no basis for her statements. Jane Doe's defamatory statements, implied or insinuated that Charity Emeronye Swift had committed a crime, or was disturbing the peace, or that she was a security risk, because these are the reasons

26

that could require or justify the need to call on an airport security police. All Plaintiff did, was exercise her Constitutional right to free speech, by discussing and posing some reasonable and necessary questions necessitated by Jane Doe's conduct in the circumstances. Jane Doe knew or should have known that her statements and their meanings were utterly untrue and false, yet she recklessly and maliciously published them to the public, to intimidate and inflict shame and humiliation on Plaintiff, and in so doing, violated Plaintiff's rights and hurt her reputation, solely on the basis that she was a black woman of African ancestry and national origin, at a place she believed Plaintiff had no business being – a place where all other passengers were white, including Plaintiff's husband.

51.  Defendant's employee's conduct in publishing her statements to everyone who is not deaf, in such a crowded public place, as described herein, was false and maliciously made with intent to injure Plaintiff. Therefore, Plaintiff is entitled to an award of punitive damages in the amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

52.  As a direct and proximate result of Defendants' conduct in publishing the above statement, Plaintiff suffered great emotional distress, mental anguish, humiliation, and physical distress. Plaintiff felt her character and reputation had been impugned, and she feels degraded and vilified by Defendants' conduct.

## COUNT V: BREACH OF CONTRACT OF CARRIAGE

53,  Plaintiff re-alleges paragraphs 1 through 52 and incorporates them by reference as though fully stated herein as part of Count IV of this Complaint**.**

54.  Mrs. Swift had a contract with Frontier Airlines when she purchased her ticket and paid for it in full, and complied with all the terms of her ticket, that she and her husband bought through a third party travel agent, in August and at all times during their flights in August/September, with same ticket. On the other hand, Frontier materially breached its contract of carriage as it applied to passengers like Mrs. Swift, who purchased an "Economy" ticket as opposed to "Basic" Ticket. The breach (charging a passenger when they are not supposed to, that as a result caused Frontier's agent to unlawfully detain and prevent Mrs. Swift from boarding the plane), is a substantial failure to perform a term that is an essential element of Mrs. Swift's contract with Frontier, to transport Mrs. Swift from Bozeman airport to Reagan National airport, without violating Mrs. Swift's legal rights in the process. Frontier's breach caused Mrs. Swift substantial harm. Mrs. Swift was falsely imprisoned by Jane Doe – unjustified loss of freedom and liberty to board the plane after having prepaid for her flight, and Defendant breached its own contract Rule 35 – Refusal to Transport, when its agent refused Mrs. Swift transportation unless she paid $25.00, which Frontier had no right to charge Mrs. Swift for. Mrs. Swift reasonably expected she would be allowed to fly as a fully paid valid ticket holder when she purchased her ticket. Mrs. Swift suffered substantial harm because Frontier's agent defamed as a result of her actions, even though they were in breach of Frontier's policies. Mrs. Swift suffered serious emotional distress as highlighted above. The cumulative effect of nonmaterial breaches may be material. As a result

of its breach of its contract of carriage with Mrs. Swift, Frontier is liable to Mrs. Swift, for

Consequential and Compensatory damages.


55.  Mrs. Swift later discovered after filing her initial Complaint, that Defendants breached their

own "Contract of Carriage," when they charged Mrs. Swift for her carry-on, because, according

to their own policy, only passengers who purchased a "Basic" ticket through third parties, were

required to pay for their carry-on – economy ticket holders were allowed to board free with their

carry-ons. Although Mrs. Swift and her husband purchased their ticket from a third party, their

ticket, was "Economy" and not "Basic." Also, according to Defendant's own policy, as posted on

their own website, carry-on fees for "Economy" ticket holders came into effect on April 28, 2014

and Mrs. Swift and her husband bought their ticket and travelled in August/September, 2013.

Hence, Mrs. Swift was not required to pay for her carry-on and Defendants had no right or

justification to charge her any fees for her carry-on, in the first place. **See Attached Exhibits A-**

**H.** Defendants also, breached their own policy and "Contract of Carriage" Rule 35 – Refusal to

Transport, when Jane Doe, unlawfully, without just cause detained, and refused to allow Mrs.

Swift to board the plane, and in fact, restricted her ability and freedom to board the plane against

her will and her rights, without just cause or justifiable reason. **See Attached Exhibit I.**


## COUNT VI: FALSE IMPRISONMENT

56.  Plaintiff re-alleges paragraphs 1 through 55 and incorporates them by reference as though

fully stated herein as part of Count IV of this Complaint.

57.  When Mrs. Swift was about to board her flight, on September 4, 2013, Frontier's agent Jane

Doe, detained her and prevented Mrs. Swift from boarding the airplane without just cause. Jane

Doe without explaining to Mrs. Swift the reason or reasons why she had to pay for her carry-on,

demanded that Mrs. Swift pay, for her carry-on and made it a condition for Mrs. Swift being

allowed to board her flight even though Mrs. Swift had a valid and fully paid ticket and had

already been checked in and given a boarding pass to board the plane. In doing so, Jane Doe,

Frontier's agent, restrained Mrs. Swift's liberty and freedom to board her flight, which she had

paid for, without just cause.  By threatening Mrs. Swift with an arrest by the security police, Jane

Doe, intimidated, threatened and terrified Mrs. Swift and caused her to pay a fee that as it turned

out, Mrs. Swift was not supposed to pay, but she paid out of great apprehension that she may be

arrested by the airport security police and locked up for no reason at all. By arbitrarily using her

power and authority as Frontier's agent, who had a say as to whether or not a passenger boards a

plane, Jane Doe, significantly restricted Mrs. Swift's freedom to board her flight when it was her

turn to board the flight, and as a result, her actions caused Mrs. Swift, great pain, and suffering

and emotional distress. Mrs. Swift felt humiliated, vilified, intimidated threatened, as Jane Doe

humiliated her in front of her husband and everyone at the gate and the adjoining gates, for no

just cause or justification whatsoever. Because Jane Doe's actions were unwarranted, hostile and

unjustified, and caused Mrs. Swift great pain and emotional distress, Plaintiff is entitled to

damages including punitive damages because Jane Doe's actions were uncalled for, intentional,

unlawful and was simply out of unbridled hatred and hostility towards Mrs. Swift who did

nothing whatsoever to provoke Jane Doe who she does not know and has never met before prior

to that day of the incident.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

(a) Declare that the actions of Defendant described above constituted discrimination on the basis of race, color, ethnicity, alienage, ancestry, and/or national origin in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000D;

(b) Hold that Virginia's Tort Laws of Intentional Infliction of Emotional Distress and Defamation by Slander have been violated against Plaintiff;

(c) Enter a permanent injunction directing Defendant and its management, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

(d) Award Plaintiff compensatory damages in an amount to be determined at trial for Plaintiff's loss and injury including, but not limited to, economic loss, shock, humiliation, embarrassment, emotional distress, and a deprivation of Plaintiff's right to make and enforce contracts, to travel as a passenger in air transportation and enjoy such rights as white people regardless of her race, color, ethnicity, alienage, ancestry, or national origin;

(d) Award Plaintiff exemplary and punitive damages in an amount to be determined at trial that would punish Defendant for its willful, wanton, and reckless conduct and that would effectively deter Defendant from engaging in similar conduct in the future;

(e) Order Defendant to cease and desist from all future discrimination or retaliation against Plaintiff;

(f) Award Plaintiff prejudgment interest;

31

(g) Award reasonable costs incurred in this action; and

(h) Award such other relief as the Court deems appropriate and just.

**TRIAL BY JURY IS DEMANDED ON ALL ISSUES TRIABLE BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of all issues that can be tried by jury.

Respectfully submitted this _____ day of _____, 20_____.

*/s/ Stephen Christopher Swift*

Stephen Christopher Swift
Virginia State Bar ID No. 38419
Swift & Swift, Attorneys at Law, P.L.L.C.
21 Eisenhower Avenue, Suite 200
Alexandria, Virginia 22314-4688
Telephone: (703) 418 – 0000
Facsimile:  (703) 535 – 8205
E-mail: steve@swift.law.pro

*Attorney for Plaintiff*
*Charity Chidinma Emeronye Swift*