IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

|  |  |  |
|---|---|---|
| CHARITY CHIDINMA EMERONYE SWIFT, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:14-CV-1139 |
| v. | ) ) ) | Hon. Judge Anthony J. Trenga Hon. Magistrate Judge Ivan D. Davis |
| FRONTIER AIRLINES, INC. (a Colorado Corporation), and JANE DOE, | ) ) ) | |
| Defendants | ) ) | |

**PLAINTIFF'S REBUTTAL
TO FRONTIER AIRLINES, INC.'S OPPOSITION
TO HER MOTION FOR LEAVE OF COURT TO AMEND COMPLAINT**

Plaintiff Mrs. Charity Swift ("Mrs. Swift"), pursuant to Federal Rules of Civil Procedure and Local Rule 7(F), submits this Rebuttal Brief to Defendant's opposition to her motion for leave of court to amend her complaint.

**INTRODUCTION**

This case is **not** just about a $25.00 carry-on fee Defendant charged Mrs. Swift - it is more than that. It is about the unlawful and discriminatory manner Mrs. Swift was singled out to pay the fee, as a condition for her boarding the plane, while her own husband who is a white Caucasian male, was not subjected to the same treatment, even though in all respects, they both were similarly situated in the circumstances. Also a charge Mrs. Swift was forced to pay by intimidation, threat of arrest, humiliation and ridicule. It is about the unlawful, hostile,

1

intimidating, threatening humiliating, ridiculing and abusive manner in which Defendant's agent treated Mrs. Swift, solely in order to force her to pay the charge, i.e., part with her own property ($25.00) without any questions asked. It is about an out of control employee, intentionally using cruel and unlawful tactic – intimidation, ridicule, humiliation, fear, threat of arrest and defamation, to force another to part with her property without any justification and without any questions asked. It is about Defendant Frontier Airlines, Inc. and its unknown agent, "Jane Doe", demanding and mandating Mrs. Swift pay a carry-on fee, that they well knew they had no right whatsoever to charge, based on their own contract of carriage, as Mrs. Swift later discovered at Defendant's own website few days before preparing her Amended Complaint and motion for leave of Court to file it. It is also about false imprisonment of Mrs. Swift, in breach of their own policy and "Contract of Carriage" Rule 35 – Refusal to Transport, when Jane Doe, intentionally and unlawfully, without just cause, detained her and refused to allow Mrs. Swift to board the plane, and in doing so, restricted her ability and freedom to work past her and board the plane, against Plaintiff's will and her rights, without just cause or justifiable reason. Defendant's Contract of Carriage Rule 35 – Refusal to Transport (attached to the Amended Complaint), details situations and or conditions that must be present before Defendant could refuse to transport a passenger, and none of those conditions was present in the circumstances of the present case. Yet, Defendant's agent emphatically told Mrs. Swift that there was no way she, Jane Doe, would allow Mrs. Swift to board or travel on the flight unless she paid for carry-on, while incredulously and obdurately, refusing to respond to Mrs. Swift's reasonable request for an explanation of the charge.

**Rebuttal of Defendant's Introduction**

When Defendant's state that "this case arises out of a $25.00 baggage fee…," they are only tangentially accurate. Mrs. Swift is black, and not one of Jane Doe's "people – white people" otherwise, why was her husband who is Caucasian not asked to pay the fee as she was asked to do, and why was he free to board the plane and his wife Mrs. Swift was not? Does Mrs. Swift's reputation have to be impugned by Defendant's agent calling the police to arrest Mrs. Swift, just because she honestly did not know why she was being charged a fee for her carry-on, and reasonably asked to know why she was being charged such fee or because Jane Doe did not like her because she was black and an African? Is Defendant's agent justified to so impugn Mrs. Swift's reputation by yelling and calling the security police to arrest Mrs. Swift and calling the attention of everyone at the gate and adjoining gates to turn and look at Mrs. Swift as if she has broken the law, or done anything unlawful or wrong, warranting a call for the police to arrest her: Is Defendant's insulting and ridiculing of Mrs. Swift, justified, because of her perceived accent, by asking her whether she understood English … just because there was a "debate" as Defendants have labored to insinuate without any basis, that there was a debate (even though they know no such debate took place). Is it unreasonable for Mrs. Swift, who honestly did not know why and how she came to owe Defendant's $25.00 carry-on fee and only wanted to know the reason before parting with her money, in the circumstances, given that Mrs. Swift and her husband had already made three flights on same ticket and trip, including one on Defendant's flight and no one asked them for any carry-on fees? And is it not legitimate and reasonable in the circumstances, for Mrs. Swift to ask why the fee, given that two of Defendant's own ticket agents checked her and her husband in, weighed their carry-ons, and issued them two boarding passes without asking them for any fees? Plaintiff believes these questions need some answers.

In their motion, Defendant makes series of inaccurate statements that seems like an attempt to distort facts and confuse issues:

> In their introduction, Doc.36 page 1, ¶ 2, Defendant states: "This case arises out of a $25.00 baggage fee Plaintiff claims she was wrongfully charged due to her race and/national origin by a gate agent employed by Frontier on September 4, 2013."

Defendant's quoted statements above, are inaccurate. They seem contrived, and attempts to confuse what this case is all about and what Mrs. Swift maintains her claims are about, in all her filings to this court.

For the record, Mrs. Swift and her husband never checked in any baggage. There is no "baggage fee" issue in this case – only a carry-on fee issue. Plaintiff maintains she was discriminated against, not only because she was singled out to pay for her carry-on without any reasons whatsoever (other whites including her husband were not asked to pay), but also the way Jane Doe treated her in an effort to make her pay a carry-on fee, on the basis of her race and national origin. For example, no one other than Mrs. Swift, was ridiculed as she was, on the basis of her perceived accent, when Defendant's agent yelled at her and said; "don't you understand English …" threatening to call the security police to arrest her, and in fact, carrying out that threat by actually calling for the security police to arrest Mrs. Swift, and for what reason?

On page 1-2 ¶ 1of her amended complaint, (NATURE OF THE CASE), Mrs. Swift states: "As described in this Amended Complaint, Jane Doe, an agent of Defendant, unlawfully discriminated against Mrs. Swift, by refusing to allow her, the only African/African-American woman and black person on the flight, to board the plane unless she paid $25.00, even though

4

two different ticketing agents of the Defendant's had already weighed Mrs. Swift and her husband's carry-ons respectively, found them within the required measurement, issued them their boarding passes without asking either of them to pay for their carry-ons. Mrs. Swift was told she would not be allowed to travel or board the plane unless she paid. Her husband on the other hand, was not asked to pay for his carry-on. Mrs. Swift believes she was discriminated, on the basis of her perceived race, color, ethnicity, alienage, ancestry, and/or national origin." Mrs. Swift claims she was treated differently from white passengers including her own husband who is Caucasian.

> In their introduction, Doc. 36 page 2 ¶¶1-2, Defendant states: (1) "In sum, Plaintiff now alleges that she was also falsely imprisoned by a Frontier gate agent because the agent **allegedly threatened to deny her boarding and call airport security if she refused to pay the $25.00 baggage fee"** (emphasis added). (2) "First, Plaintiff, by her own admission in the Amended Complaint, was never detained at any point during the incident. She merely alleges that she was wrongfully required to pay the fee before being allowed to board her flight, and therefore, she was falsely imprisoned. This is not false imprisonment, as Plaintiff was never actually detained in the gate area or anywhere else."

Defendant's statements quoted above, are totally inaccurate and misleading. On the bottom of Doc.32-2 ¶ 2 page 2 of her Amended Complaint, among other statements, Mrs. Swift states: "…Defendants also breached their own policy and "Contract of Carriage" Rule 35 – Refusal to Transport, when Jane Doe, unlawfully, without just cause detained, and refused to allow Mrs. Swift to board the plane, and in fact, restricted her ability and freedom to board the plane against her will and her rights, **<u>without just cause or justifiable reason</u>**", and she referred to exhibit I - her "ticketed fare" that was attached to her Amended Complaint, which clearly states that her ticket was "Economy" and not "Basic" as Defendants wrongly claim. On Doc.32-2 ¶ 3, page 3, Plaintiff's Amended Complaint states: "Jane Doe was emphatic that Mrs. Swift will not board

5

the plane, or travel on Frontier Airlines unless she paid $25.00. She also backed that emphasis up with the threat of calling for Mrs. Swift's arrest…" As the quotes above show, Mrs. Swift in deed, stated, in her Amended Complaint, that she was detained, and in fact, she was detained because her freedom to board the plane was restricted by Defendant's agent as she attempted to board. She was unable to do so, on her own will or volition, even though boarding the plane was the only thing she wanted to do at the time, so that she could go home after her trip. She could not board the plane, because, Defendant's agent, did not just "threaten to deny…" as Defendant claimed in their above quoted statement in bold. On the contrary, Defendant's agent unequivocally asked Mrs. Swift to step out of the boarding line, and not to board the plane until she was given permission to by her, Jane Doe after she has paid the carry-on fee. Hence, Defendant's quote above is totally false and inaccurate.

> Defendant state in their opposition motion, Doc.36 ¶ 2 page 2, "Second, Plaintiff fails to state a claim for breach of contract because the terms of the purported contracts attached to her proposed Amended Complaint clearly establish that Plaintiff was properly charged the $25.00 fee…"

Defendant's above quoted statement is totally inaccurate and irrelevant for several reasons:

(1) On a very simple and basic level, their statement does not mirror the reality of the main contract document – the fare ticket. Mrs. Swift's ticket clearly states "Economy" as opposed to "Basic", and all through the three flights she made on the trip, including one leg, on Frontier, through the time she was issued a boarding pass, no one mentioned anything about Mrs. Swift's ticket being a "basic" as opposed to "economy." Even Jane Doe, did not tell Mrs. Swift that the reason she was asking her to pay the charge, was because she had a "basic" ticket when Mrs. Swift asked for such reason, until now in Defendant's motion and after Mrs. Swift attached

Defendant's fare chart as part of her newly discovered evidence, that forms the basis of the two new counts of false imprisonment and breach of contract in her Amended Complaint. The only reasonable and persuasive reason no one – not even Jane Doe herself was unable to say to Mrs. Swift that she was charged because she had a basic ticket, was because such statement will be totally false, and a misrepresentation, because Mrs. Swift's ticket is an "economy" ticket, which at the time, was not subject to any carry-on fee as Defendant's fare chart on page 4 of their Doc. 36 clearly shows. That, also, logically explains why the agents who checked Mrs. Swift in from Bozeman to Denver, and the two ticket agents who also checked her and her husband in at Denver, for the DC final leg flight gave them their boarding pass and never asked for a carry-on fee, until Jane Doe showed up and undermined them by invalidating the check-in service they gave Mrs. Swift.

(2)  On page 4 of Defendant's Doc.36, Defendant incorporated their fare options chart, which Plaintiff attached to her Amended Complaint, as proof that Defendant and its agent, wrongly charged her for her carry-on because her fare ticket indeed, was "economy" and not "basic" as Defendant claims. Defendant's claim that the fare chart "establish that Plaintiff was properly charged…," has no basis. According to same chart, one of the attributes of a "basic" fare, among other factors like being booked through other travel agencies, is, that basic fare ticket holders' have their "seats assigned at check-in." Mrs. Swift and her husband's seats for the whole trip was assigned to them when their ticket was booked, on August 19, 2013 and not at a check-in on September 4, 2013.

7

(3) By ignoring the fact that Mrs. Swift's fare ticket clearly states "economy" and not "basic" and to argue that her ticket was "basic" because it was bought through third party agent, they seem to imply that the ticket Mrs. Swift travelled with, was not the controlling ticket/document of contract for her flight on the Defendant's aircraft. They also seem to imply that a passenger, after booking a fully paid flight on Frontier, through a third party agent, should in addition, go to Frontier's website to second guess the status of the ticket they have just been issued, even if the passenger expressly instructed the third party agent to book her an economy flight. This is unrealistic, and even Defendant's will agree that it does not make any sense because it will serve no purpose and make third party booking agent's services redundant. And if so, then Frontier might as well have a policy that states that passengers can only buy their fare tickets from Frontier.com if they wish to travel on Frontier's flights.

(4) Mrs. Swift has not heard and did not know there was a basic level of air fare, until her research found Defendant's fare charts on their website, because she and her husband **always** flew economy and **always** instructed their travel agent to book "economy" flights for them.

(5) Defendant's own statement on page 5 of their Doc. 36 ¶ 3 quoting their carry-on policy, which Plaintiff attached to her Amended Complaint, states: "Carry-On - A passenger may take on piece of carry-on baggage onto the aircraft. A charge may apply for the carry-on bag depending on the ticketed Fare Option." "… [t]here is no free baggage allowance included with basic tickets. Baggage fees apply to each checked bag," corroborates Plaintiff's claim that she was wrongly charged carry-on fee, because such fee at her travel date, did not apply to her because her "ticketed Fare Option" was "economy" and not "basic", and because the charge

8

applied only to basic tickets. This, also logically corroborates Defendant's own carry-on policy that instituted carry-on charges on "economy" tickets, "purchased on or after April 28, 2014, as exhibit F of Plaintiff's Amended Complaint show." Interestingly, that evidence was not attached to Defendants opposition motion, Doc. 36, as they did the "basic" carry-on chart. Defendant's statement continues: "The same hold true for 'Economy' tickets. *Id.* The baggage fees are then cross-referenced in Rule 225, which states the fee schedule as follows:…", and incorporates its checked in baggage chart, that is part of Plaintiff's exhibit H to her Amended Complaint. The insertion of **"the same hold true for economy" tickets**, to statements that Defendant knows has no connection to, and was not intended to have any connection to their carry-on charge policy with regards to "basic" tickets, is deceptive, unfair, and serves no legitimate purpose. Defendant is well aware, that that statement relates to "checked in baggage", and not carry-ons; that Mrs. Swift and her husband had no checked-in baggage, and that the issue in this case concerns only carry-ons and yet, they were comfortable to insert the language to confuse by claiming what their own policy does not intend or mean.

**Rebuttal of Defendant's Statement of Facts**

> On page 3 of their Doc. 36 ¶ 2, Defendant states: "… **While boarding** her connecting flight, Plaintiff alleges that a Frontier agent told Plaintiff that she would have to pay a $25.00 fee for her carry-on baggage **before she was allowed to board**."

This statement is not accurate and is at best, confusing, as Mrs. Swift cannot both at the same time be boarding and also not allowed to board. To avoid confusion, What Mrs. Swift alleged on page 12 of her Amended Complaint, Doc. 32-2 ¶ 19-20, in part states: "…When zone 2 was called for boarding, Plaintiff and her husband fell in line. There were fewer than four people in front of them. Plaintiff was in front of her husband in the line, and each was carrying their own

carry-on. The two young women who earlier, checked them in and gave them their boarding pass, were at the gate letting people on-board. However, as Plaintiff was next in line, and just as she stretched her hand to hand over her boarding pass to one of the two young women, another woman ("Jane Doe") who was definitely older than the two young ladies that dealt with Plaintiff and her husband earlier, appeared and said, "give it to me", i.e., Mrs. Swift should giver Jane Doe her boarding pass. It happened so fast that Jane Doe basically snatched Mrs. Swift's boarding pass out of her hand.

When Jane Doe took the boarding pass from Mrs. Swift's hand, instead of tearing and giving Mrs. Swift the assigned seat coupon part of it, as they were doing with other passengers, and let her pass to board the plane like others before her, Jane Doe looked at Mrs. Swift and her carry-on and asked, "Is this your luggage?" Mrs. Swift answered "yes". Then Jane Doe said to her, "You have to pay twenty-five dollars before you can board."

> On same page 3 of their Doc. 36 ¶ 2, Defendant continued:"… Plaintiff claims she was the only one asked to pay the $25.00 fee due to her race and national origin. Id. ¶¶ 25-26."

The above quoted statement, like many others, is contrived and attempts to distort and/or at best, confuse the facts and the issues, and in no way reflects Mrs. Swift's statements in her Amended Complaint, as it appears on page 1-2 ¶ 1 of her Amended Complaint Doc.32-2, (NATURE OF THE CASE), which the Court presently has before it. Plaintiff asks the Court to pay close attention and to weed out irrelevances and any mischaracterizations of Plaintiff's accounts so as to serve the ends of justice.

"As Mrs. Swift and her husband moved aside, and off from their now boarding line, **Mrs. Swift watched everyone else boarding without being asked to pay for their luggage before boarding.** So, she asked Jane Doe, why was she the only one with a boarding pass who is asked to pay $25 before boarding the plane? She turned at Mrs. Swift and angrily threatened, "do you want me to make you pay fifty dollars ($50) or do you want to pay twenty-five dollars ($25)?" Mrs. Swift explained to Jane Doe that she failed to understand why she was singling her out to pay for her carry-on when the rest of the passengers were allowed to board without Jane Doe or anyone else asking them to pay before boarding. Mrs. Swift then asked Frontier's agent, "If I must pay, why are you not asking my husband also to pay because we both have carry-ons, booked same flight together, have exact same boarding passes? Jane Doe then became irate and yelled at Mrs. Swift and said, "Shut your mouth, I don't want you to talk to me again, I have already told you, if you don't pay, I will make sure you don't board this flight."

Mrs. Swift accounted for what she saw with her own eyes, from the time Jane Doe, asked her to step aside from boarding group 2; Plaintiff's husband is Caucasian, in all respects similarly situated as Plaintiff was in the circumstances, yet he was not asked to pay even despite Plaintiff's asking Jane Doe why her husband was not charged; Plaintiff was the only black person on the entire flight, and so far, Defendant have not disputed these facts: Finally, Plaintiff's "ticketed fare option" stated that it was "economy" and not "basic" and Plaintiff was unlawfully discriminated against because of her race and national origin.

> On same page 3 of their Doc. 36 ¶ 3, Defendant states: After being informed of the fee, Plaintiff debated with the agent as to why she should not have to pay it. *Id. ¶¶*20-24. At some point thereafter, the agent allegedly became impatient with Plaintiff and told her, "Can't you see that I don't care, and I don't want to hear you say anything more to me again, you pay or I will call the airport security police to come and arrest you." *Id.* ¶2.

11

>After Plaintiff failed to respond, the agent then allegedly state, "Can someone call me [sic] an airport security police?"

Defendant's quoted statement above is a continuation of attempts to distort and confuse facts. The above statement distorts and confuses, because, although Defendant uses the word **allegedly**, in "allegedly became impatient with Plaintiff," it is not clear who is doing the alleging – Plaintiff or Defendant's agent?" Defendant cannot legitimately paraphrase statements they attribute to Plaintiff as facts of the case, while quoting Plaintiff's documents. They should quote such statements, verbatim for the sake of clarity and to avoid confusion.  Defendant also states, "Plaintiff debated with the agent" and cites Id. ¶¶25-25. Again, there is no clarity as to whether Defendant is claiming that Plaintiff made the statement in her Complaints or whether it is their own statement/account of what happened, because Plaintiff never debated with their agent. All Mrs. Swift did, was ask legitimate and reasonable questions, which Jane Doe never answered because she was full of hatred and contempt for the African, black lady, Mrs. Swift, who was not doing as she Jane Doe commanded her to do, and so could not care less, as Defendants stated above. Also, Defendant's statement, "…after Plaintiff failed to respond…" does not make any sense and is confusing. On one hand, Defendant states: "Plaintiff debated with agent" and in the same breadth, "Plaintiff failed to respond" and "allegedly" that lack of response made their agent impatient with Mrs. Swift, or very mad with her, that she had to call the security office to arrest her without any justification. However, Defendant's statement above also corroborates Mrs. Swift's claim that Defendant's agent, treated her with unbridled arrogance, hostility and impunity because as a ticket agent, she obviously had the power to decide who boards or not. She knew she had considerable power over Mrs. Swift in that regard, and she had no qualms in using it anyway she chose, and did not care who she hurt, because was unaccountable to no one. Otherwise, she could have simply explained to Mrs. Swift, who merely asked to know why she

was suddenly being charged carry-on fee after she had already made three flights, including one on Frontier, without being asked to pay anything for the same carry-on.

> Further down same page 3 of their Doc. 36 ¶ 3 of their documents, Defendants state: "…By paying the fee, Plaintiff claims she was falsely imprisoned because the agent "restrained Plaintiff's liberty and freedom to board her flight, which she had paid for, without just cause."

Defendant knows fully well that the basis of Plaintiff's false imprisonment claim is not just that she paid a fee, or as Defendant's put it, "by paying the fee." Yet, they go to lengths to say so. On the contrary, Mrs. Swift's Count VI, false imprisonment, Doc. 32-2, page 29-30 ¶¶ 56-57 sufficiently explain her claim with ample facts.  Mrs. Swift consistently has claimed, and it is uncontroverted, that Jane Doe prevented her from boarding her flight when it was her turn to board, and followed it with a threat of, and call for Mrs. Swift's arrest; there was no way Mrs. Swift or anyone in her shoes would have attempted to walk into the plane without being arrested by the security – Defendant's agent would have ensured such arrest. Jane Doe did not have legal justification to deny Mrs. Swift her right to board the flight, because (a) Defendant had no right at the time to charge her the fee, and (b), their "Contract of Carriage" Rule 35 – Refusal to Transport, did not permit Defendant and their agent to prevent Mrs. Swift from boarding the Flight, because none of the rules under that contract were broken by Mrs. Swift.

## STATEMENT OF FACTS

Plaintiff's Amended Complaint, with attached exhibits, are already before the Court. Plaintiff has used a good portion of her Amended Complaint to rebut some inaccurate and or confusing statements of the Defendant in its motion. Hence, Plaintiff did not find it helpful to deluge the Court with same facts again here.

## LEGAL STANDARD

**Motion for Leave of Court to file an Amended Complaint**

If a motion to amend is filed more than twenty-one days after a responsive pleading or motion under Rule 12(b) is served, either leave of court or the consent of the opposing party is required. Fed. R. Civ. P. 15(a)(2). The courts are instructed to "freely give leave when justice so requires." Id. Thus, leave to amend a pleading should only be denied when (1) the amendment will prejudice the defendant; (2) the moving party has acted in bad faith; or (3) the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). An amendment would be futile if it fails to state a claim under the Federal Rules of Civil Procedure. See *Katyle v. PermNat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011).

**Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*. 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding the motion, a court may consider the facts alleged on the face of the complaint, as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Moore v. Flagstar Bank*. 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § Case 2:14-cv-00141-HCM-LRL, Document 17, filed 09/08/14, page 4 of 15 Page ID# 165 1357 (1990)).

In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." *Venkatraman v. REI Svs. Inc*. 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mvlan Labs. Inc. v. Matkari*. 7 F.3d 1130, 1134 (4th Cir.1993)).

## ARGUMENT

### I. BREACH OF CONTRACT: PLAINTIFF'S BREACH OF CONTRACT CLAIM IS PROPER BECAUSE IT MEETS THE *TWOMBLY* AND *IQBAL* PLAUSIBIITY TEST AND SO SHOULD NOT BE DISSMISSED.

Virginia Code § 59.1-507.1. Breach of contract; material breach states:

(*a*) Whether a party is in breach of contract is determined by the agreement or, in the absence of agreement, this chapter. A breach occurs if a party without legal excuse fails to perform an obligation in a timely manner, repudiates a contract, or exceeds a contractual use term, or otherwise is not in compliance with an obligation placed on it by this chapter or the agreement. A breach, whether or not material, entitles the aggrieved party to its remedies. Whether a breach of a contractual use term is an infringement or a misappropriation is determined by applicable informational property rights law.
(b) A breach of contract is material if:
(1) The contract so provides;
(2) The breach is a substantial failure to perform a term that is an essential element of the agreement; or
(3) The circumstances, including the language of the agreement, the reasonable expectations of the parties, the standards and practices of the business, trade, or industry, and the character of the breach, indicate that:
(A) The breach caused or is likely to cause substantial harm to the aggrieved party; or
(B) The breach substantially deprived or is likely substantially to deprive the aggrieved party of a significant benefit it reasonably expected under the contract.
(c) The cumulative effect of nonmaterial breaches may be material.
(2000, cc. 101, 996.)

In Virginia, a plaintiff can prevail on a breach of contract claim by providing proof of three elements: "[A] legally enforceable obligation of a defendant to a plaintiff, a defendant's violation or breach of that obligation, and injury or damage to the plaintiff caused by the breach of obligation."  Ulloa v. QSP, Inc., 624 S.E.2d 43, 48 (Va. 2006).

15

Contrary to Defendant's views, Plaintiff has sufficiently made out an enforceable breach of contract (agreement) claim against them, because at the time of Plaintiff's travel, Mrs. Swift bought and paid fully for her trip (consideration), and was issued a ticket and promise from Defendant to fly Plaintiff to her destination in accordance with the terms of ticket. Mrs. Swift kept her part of the contract, but Defendant did not. At some point on the trip, at Denver Airport, Defendant, through its agent, acted contrary to the terms of the contract and is in breach by not honoring the terms of Mrs. Swift's "ticketed fare option." In breach, Defendant, wrongly and unlawful changed the terms of Mrs. Swift's economic ticket and charged her for her carry–on when they had no right to do so. Secondly, Defendant, through its agent, also breached their Contract of Carriage Rule 35 – Refusal to Transport, which is a contract that governs Defendant's relationship with its passenger, including Mrs. Swift when there is an issue of refusal to board its flights." Rule 35, lists several factors and circumstances when it will be lawful to refuse or prevent a passenger to board their booked flight, none of those factors applied in the present case, yet, Jane Done in violation of Rule 35, prevented Mrs. Swift from boarding and made her boarding subject to her paying a fee, which Defendant in the first place had no right to, even in the face of their own policies that say the opposite.

Defendant argues that Plaintiff's contract damages are not recoverable. But they are wrong. In Virginia, a party's conduct gives rise to both a contract and tort claim only in limited circumstances. The Virginia Supreme Court had explained that to "recover in tort, the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Augusta Mut. Ins. Co. v. Mason*, 645 S.E.2d 290, 293 (Va. 2007). Plaintiff' believes that her case falls within such limited cases, because her contract

breach is intertwined with her false imprisonment, defamation, and intentional infliction of emotional distress claims. The damages suffered, are also connected.

## II. FALSE IMPRISONMENT: PLAINTIFF'S FALSE IMPRISONMENT CLAIM IS PROPER BECAUSE IT MEETS THE *TWOMBLY* AND *IQBAL* PLAUSIBIITY TEST AND SHOULD NOT BE DISMISSED

"No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1 (1968) (quoting *Union Pac. R. Co. v. Botsford*, 141' Under Virginia law, "false imprisonment" is restraint of one's liberty without sufficient legal excuse. Montgomery Ward & Company v. Wickline, 188 Va. 485, 50 S.E. 2d 387 (Va.App. 1948). Ark v. Shifflett U.S. 250, 251 (1891)). It is from this sacred right that this case finds its genesis.

"[T]he necessary elements of a case for false imprisonment are a deprivation of the liberty of another without his consent and without legal justification." Montgomery Ward v. Wilson, 664 A.2d 916, 926 (Md. 1995) (quoting Great Atl. & Pac. Tea Co. v. Paul, 261 A.2d 731, 738 (Md. 1970)) (citations omitted). *In Robert F. Spiers v. Gene E. Sydnor* No. 00-1712 (CA-97-841 (2001), The Fourth Circuit noted that the tort of false imprisonment is defined in Virginia as "restraint of one's liberty without any sufficient legal excuse therefor by word or acts which he fears to disregard, and neither malice, ill will, nor the slightest wrongful intentions is necessary to constitute the offense." *Montgomery Ward & Co. v. Freeman, 199 F.2d 720, 723 (4th Cir. 1952*) (internal quotation marks omitted). "False imprisonment may result not only from the arrest of a person without any valid warrant, but also from the unlawful detention of a prisoner

17

who has been lawfully arrested." *Sands & Co. v. Norvell*, 101 S.E. 569, 574 (Va. 1919); see *Mullins v. Sanders,* 54 S.E.2d 116, 120 (Va. 1949).

If person is under reasonable apprehension that force will be used unless he willingly submits and he does submit to extent he is denied freedom of action, this constitutes false imprisonment. *Zayre, Inc. v. Gowdy*, 207 Va. 47, 147 S.E.2d 710. 1966. Court of Appeals of Maryland in *Okwa, et ux. v. Michael G. Harper, et al*. No. 129, July 28, 2000, Court of Appeals of Maryland noted, although the intentional torts of false arrest and false imprisonment are separate causes of action, they share the same elements. See generally *Scott v. Jenkins*, 345 Md. 21, 29, 690 A.2d 1000, 1003 (1997); *Montgomery Ward*, 339 Md. at 721, 664 A.2d at 926.  We shall discuss the torts concurrently.  For a successful cause of action based on false arrest or false imprisonment, the plaintiff must establish that "the defendant deprived him or her of his or her liberty without consent and without legal justification." See *Scott*, 345 Md. at 29, 690 A.2d at 1003; *Montgomery Ward*, 339 Md. at 721, 664 A.2d at 926; *Ashton v. Brown*, 339 Md. 70, 119, 660 A.2d 447, 471 (1995); *Great Atlantic & Pacific Tea Co. v. Paul*, 256 Md. 643, 654, 261 A.2d 731, 738 (1970).   The core issue under Appellants "False Arrest/Imprisonment" cause of action is whether Appellees had legal authority to facilitate the arrest of Mr. Okwa at the airport.

In *Betty Slagle Minton, et al., v. Nathan Alan Kennedy, et al*., Case No. 2:13cv00036, the 14th day of November, 2013, the United States District Court Western District Of Virginia in *Bigstone Gap Division* noted that the terms false arrest and false imprisonment are used interchangeably in Virginia.  The claims of false imprisonment and false arrest are distinguishable in terminology only, the only difference being the manner in which they arise: a

person may be falsely imprisoned by another without being arrested, but a person falsely arrested is also concurrently falsely imprisoned. See *Smith v. Button*, 43 Va. Cir. 379 (Va. Cir. Ct. Sept. 24, 1997). Under Virginia law, false imprisonment is "the direct restraint by one person of the physical liberty of another without adequate legal justification." *Figg v. Schroeder*, 312 F.3d 625, 637 (4th Cir. 2002) (quoting *Jordan v. Shands*, 500 S.E.2d 215, 218 (Va. 1998)); see also *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011) (citing *Montgomery Ward & Co. v. Wickline*, 50 S.E.2d 387, 388 (Va. 1984)). In the context of an arrest, if such arrest is lawful, then a plaintiff cannot prevail on a false imprisonment claim. *See Lewis*, 708 S.E.2d at 890 (citing *DeChene v. Smallwood*, 311 S.E.2d 749, 752 (Va. 1984)). In other words, in stating a claim for false imprisonment, there must be some allegation that the process that led to the arrest was unlawful. *See Cole v. Eckerd Corp.*, 54 Va. Cir. 269 (Va. Cir. Ct. Dec. 20, 2000) (citing *Coughlan v. Jim McKay Chevrolet, Inc.*, 18 Va. Cir. 265 (Va. Cir. Ct. Nov. 13, 1989) (citing *Motley v. Va. Hardware & Mfg. Co.*, 287 F. Supp. 700 (W.D. Va. 1968)).

The requisite restraint may be accomplished by "words or acts, which [the individual] fears to disregard, and neither malice, ill will, nor the slightest wrongful intention is necessary to constitute the offense." *Cole*, 54 Va. Cir. 269 (quoting *Wickline*, 50 S.E.2d at 387). It is not essential that a citizen be confined in jail or placed in the custody of an officer to state a claim for false imprisonment. See *S.H. Kress & Co. v. Musgrove*, 149 S.E. 453, 455 (Va. 1929); *Zayre of Va., Inc. v. Gowdy*, 147 S.E.2d 710, 713 (Va. 1966). If a person is under a "reasonable apprehension that force will be employed unless he willingly submits, and he does submit to the extent that he is denied freedom of action, this, in legal contemplation, constitutes false imprisonment." *Musgrove*, 149 S.E. at 455; *Gowdy*, 147 S.E.2d at 713. However, as stated

19

herein, a plaintiff need not be in the formal custody of an officer to state a claim for false imprisonment. See *Musgrove*, 149 S.E. at 455; *Gowdy*, 147 S.E.2d at 713.

## CONCLUSION

WHEREFORE, Plaintiff Mrs. Swift, respectfully requests that the Court grant Plaintiff's Motion for Leave of Court to Amend her Complaint, and also to deny Defendant's Motion to Dismiss Counts III, V, and VI.

Dated: December 29, 2014                    Respectfully submitted,

/s/ Stephen Christopher Swift
Stephen Christopher Swift
Virginia State Bar ID No. 38419
Swift & Swift, Attorneys at Law, P.L.L.C.
2121 Eisenhower Avenue, Suite 200
Alexandria, Virginia 22314-4688
Telephone: (703) 418-0000
Facsimile: (703) 535-8205
E-Mail: steve@swift.law.pro
*Attorney for Plaintiff*
*Charity Chidinma Emeronye Swift*

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed on December 29, 2014 with the Clerk of the Court through the Court's ECM/CF system, which will electronically serve all counsel of record.

/s/ Stephen Christopher Swift
Stephen Christopher Swift