IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| **CHARITY CHIDINMA EMERONYE SWIFT,** | |
| Plaintiff, | Civil Action No. 1:14-CV-1139 |
| v. | Hon. Judge Anthony J. Trenga |
| | Hon. Magistrate Judge Ivan D. Davis |
| **FRONTIER AIRLINES, INC. (a Colorado corporation), and JANE DOE,** | |
| Defendants. | |

**FRONTIER AIRLINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND FOR OTHER RELIEF**

Defendant Frontier Airlines, Inc. ("Frontier"), pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 7(e), submits this memorandum of law in support of its Motion to Enforce the Settlement Agreement and for Other Relief.

## I.   INTRODUCTION

This case arises out of a $25.00 baggage fee Plaintiff Charity Chidinma Emeronye Swift ("Plaintiff") claims she was wrongfully charged due to her race and/or national origin by a gate agent employed by Frontier. On September 4, 2014, Plaintiff filed the present complaint, alleging discrimination under 42 U.S.C. § 1981 and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, as well as claims for defamation and intentional inflection of emotional distress ("IIED") under Virginia law. (Dkt. 1.) Upon Frontier's Motion to Dismiss (Dkt. 10), this Court dismissed Plaintiff's claims for Defamation and IIED on December 31, 2014. (Dkt. 38.)

Thereafter, Plaintiff's complaint was amended to add a count for breach of contract. (Dkt. 43, 45.)

On January 9, 2015, the parties reached a mutual agreement to settle all of Plaintiff's claims against Frontier in exchange for a certain monetary settlement amount[1] and confidentiality. Plaintiff now seeks to improperly disavow the Settlement Agreement. Accordingly, Frontier requests that this Court enforce the Settlement Agreement, dismiss Plaintiff's Complaint with prejudice, and award Frontier its costs and fees incurred in filing the instant Motion.

## II. STATEMENT OF FACTS

**THE PARTIES' SETTLEMENT AGREEMENT**

On January 9, 2015, the parties appeared before Magistrate Judge Ivan D. Davis for hearing on Plaintiff's Motion for Leave to Amend the Complaint. (Dkt. 42.) After the hearing, counsel for the parties, as well as Plaintiff herself, agreed to sit down and discuss the case and the potential for resolution. (Ex. A, Wegman Decl., ¶3.) Plaintiff, Charity Swift, her counsel/husband Stephen Swift and counsel for Frontier, Paula Wegman and Sarah Moffett, walked together to the LeClairRyan law firm, located across the street from the courthouse, where a private conference room was available. *Id.* at ¶4. All the lawyers, as well as Plaintiff (who is also a lawyer) sat together in that conference room to discuss the case. *Id.* at ¶5. After some preliminary discussions, attorney Moffett excused herself from the meeting to attend to another matter. *Id.* at ¶6. Plaintiff's counsel, Plaintiff and Frontier attorney Wegman continued

---

[1] The monetary settlement amount agreed upon was subject to confidentiality, and, as such, is redacted from this and the supporting materials, all of which are filed electronically and now publicly available.

2

their discussions regarding the case, including their respective positions and the potential for resolution for approximately two hours. *Id.* at ¶7.

Near the end of those two hours, Plaintiff and her counsel provided a settlement demand. Specifically, they advised Attorney Wegman that Plaintiff would dismiss her claims against Frontier in their entirety in exchange for a certain monetary figure. *Id.* at ¶8. Attorney Wegman asked Plaintiff and her counsel whether they would be willing to wait while she contacted her client with respect to their demand and they agreed. *Id.* at ¶9. Attorney Wegman temporarily excused herself from the meeting to make the necessary phone calls. *Id.* at ¶9. Approximately 10 minutes later, Attorney Wegman returned to the conference room and advised Plaintiff and her counsel that Frontier would agree to pay the monetary amount demanded in exchange for a complete dismissal of Plaintiff's claims against Frontier and confidentiality as to the agreement. *Id.* at ¶10. Plaintiff and her counsel agreed. *Id.* at ¶10. Attorney Wegman shook hands with Plaintiff and her counsel in consummation of the Agreement, thanked them for their time and cooperation and advised that a written Settlement Agreement would be provided early the next week. *Id.* at ¶11.

Within an hour of reaching the Settlement Agreement, Attorney Wegman sent Plaintiff's counsel an e-mail confirming the Settlement Agreement which stated as follows:

> Dear Mr. Swift, please let this confirm that plaintiff, Ms. Charity Swift, has agreed to release and dismiss all her claims against Frontier, as more fully set forth in her complaint, in exchange for $[2]. The settlement terms include confidentiality. We will forward a Release and Settlement agreement to you early next week.

---

[2] The monetary settlement figure has been redacted.

> My thanks to both you and Charity for your time today. It was a pleasure meeting you both in person. Have a good weekend.
>
> Paula Wegman

(*Id.* at ¶12, Ex. A - Wegman email dated January 9.)

Plaintiff did not dispute, question or object to that confirmation of the Settlement Agreement and its terms. *Id.* at ¶12. On Monday, January 12, Frontier's counsel sent a written Full Release and Settlement Agreement, reflecting the terms mutually agreed upon, to Plaintiff's counsel via e-mail. (Id. at ¶13, Wegman email dated January 12.)

The next day, Plaintiff's counsel responded to the e-mail from Frontier's counsel forwarding the Full Release and Settlement Agreement. (Id. at ¶14.) Plaintiff's counsel did not dispute, contest or object to any of the terms contained in the Full Release and Settlement Agreement. *Id.* The only modification requested by Plaintiff's counsel was the addition of a signature line for Frontier. *Id.* Specifically, Plaintiff's counsel requested as follows:

> Could you please add a line for a Frontier Airlines, Inc. officer/agent who has a binding authority to sign? We were hoping that your client will sign their part and send it to us for Charity to sign. As soon as we receive this, we will do our part and return it to you.

(*Id.,* Exhibit C – Swift email dated January 13.)

Frontier was amenable to this addition, added a signature line as requested and obtained the necessary signature. (Wegman Decl., ¶15.) The next day, January 14, Plaintiff's counsel sent another email, claiming that he "now had the time to fully and properly evaluate" the case and that he has "advised his client that she should not go ahead with the agreement at this time, because the settlement is not fair and not in her best interest, and she has accepted my advice." (Wegman Decl., ¶16, Exhibit D – Swift email dated January 14.)

Counsel for Frontier subsequently forwarded the Full Release and Settlement Agreement, which had been signed by an authorized Frontier agent, and asked that Plaintiff and her counsel comply with the Agreement, and counsel's explicit promise, namely, to obtain Plaintiff's signature and return it to Frontier's counsel upon receipt of same. (Wegman Decl., ¶17, Exhibit E – Wegman email dated January 16.) Undersigned counsel further advised that if Plaintiff refused to comply with the Settlement Agreement, Frontier would be forced to file a Motion to Enforce the Settlement and seeks its attorneys' fees and costs for doing so. (*Id.*) Plaintiff's counsel did not respond to this correspondence.[3]

To date, Plaintiff has refused to sign the Agreement. Counsel for Frontier has spoken with Plaintiff's counsel on the telephone twice subsequent to the January 16 email. During those teleconferences, Frontier's counsel specifically asked Plaintiff's counsel the basis for the attempt to renege, and attempted to resolve this matter in accordance with Local Rule 7(e). Plaintiff's counsel stated that the Settlement Agreement is not effective because Plaintiff did not sign it and indicated that, instead, they are willing to entertain "another settlement offer" from Frontier for a monetary amount higher to which they previously agreed. (Exhibit E, Wegman Decl., ¶18.)

### III. ARGUMENT

**ENFORCEMENT OF THE SETTLEMENT AGREEMENT AGAINST PLAINTIFF IS REQUIRED BECAUSE A BINDING AND ENFORCEABLE AGREEMENT WAS REACHED BETWEEN THE PARTIES.**

District courts have, pursuant to federal law, the inherent authority, to enforce settlement agreements. *Millner v. Nortolk & w. Ry. Co.,* 643 F.2d 1005, 1009 (4th Cir. 1981). "If an

---

[3] Instead, on January 20, 2015, Plaintiff filed untimely objections, which she concedes were due on January 5, 2015 (Dkt. 47, Memo, p. 2.), and responses to Frontier's first set of discovery requests. This matter is being separately addressed with the Court. (Dkt. 46 – 47.)

agreement for complete settlement of the underlying litigation, or part of it, has been reached and its terms and conditions can be determined, the court may enforce the agreement summarily as long as the excuse for non-performance of the agreement is 'comparatively insubstantial.'" *Hensley v. Alcon Laboratories, Inc.* 277 F.3d 535 (4th Cir. 2002), citing *Millner*, 643 F.2d at 1009. "Having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement, and the fact that the agreement is not in writing does not render it unenforceable." *Id.,* citing *Young v. FDIC,* 103 F.3d 1180, 1195 (4th Cir. 1997) and *Alexander v. Industries of the Blind, Inc.,* 901 F.2d 40, 41 (4th Cir. 1990); *Petty v. Timken Corp.,* 849 F.2d 130, 133 (4th Cir. 1988)(enforcing an oral settlement in a Title VII case). In order to enforce a settlement agreement, a district court must: (1) find that the parties reached a complete agreement, and (2) must be able to determine its terms and conditions. *Hensley* at 541; *Moore v. Beaufort County,* 936 F.2d 159, 162 (4th Cir. 1991).

   The requirements needed to enforce the Settlement Agreement reached between the parties here have been met. The Wegman Declaration, and the exhibits thereto, demonstrate that a complete Settlement Agreement had been reached between Plaintiff and Frontier. Plaintiff agreed to release and dismiss all her claims against Frontier, as set forth in her complaint, in exchange for the monetary amount demanded and confidentiality. (Wegman Decl., ¶10.) The Settlement Agreement was confirmed in writing by Frontier. (Wegman Decl., ¶12.) Plaintiff did not question or contest the confirmation of the Settlement Agreement. *Id.* A written Full Release and Settlement Agreement was provided to Plaintiff. (Wegman Decl., ¶13.) Plaintiff did not question or contest the written Settlement Agreement or any of its terms. (Wegman Decl., ¶14.) Rather, the single modification requested by Plaintiff was the addition of a signature

line for Frontier, to which counsel for Frontier agreed.  (Wegman Decl., ¶14, 15.)  Indeed, the fact that a complete Settlement Agreement had been reached is conceded in Plaintiff's counsel's subsequent correspondence (attempting to renege) which specifically states that "I have advised my client that she should not go ahead *with the agreement* at this time."  (Wegman Decl., ¶16, Exhibit D.)

Nor is there any question regarding the settlement terms and conditions that were agreed upon.  As set forth above, the terms were confirmed in writing and not contested.  Those terms were captured in a written Confidential Full Release and Settlement Agreement, which was provided to Plaintiff.  Indeed, Plaintiff's counsel reviewed the written Confidential Full Release and Settlement Agreement, did not contest any of its terms and explicitly agreed that upon receipt of such document signed by Frontier, counsel and Plaintiff "will do our part and return it to you" with Plaintiff's signature.  (Wegman Decl., ¶14, Exhibit C.)  Plaintiff is in possession of that exact agreement containing Frontier's signature and now apparently has had second thoughts and refuses to sign.  (Wegman Decl., ¶17, 18.)  As noted by the Fourth Circuit in *Young*, "having second thoughts about the results of a valid settlement agreement does not justify setting aside an otherwise valid agreement."  *Young,* 103 F.3d at 1195.  A complete Settlement Agreement was reached, the terms and conditions of that agreement are clear, and the settlement should be enforced.  Plaintiff cannot renege on the agreement simply because she now wants more money.

### III.   CONCLUSION

WHEREFORE, Defendant Frontier Airlines, Inc. respectfully moves for entry of an Order compelling Plaintiff to comply with the parties' Settlement Agreement, dismiss the case in

its entirety and with prejudice, and, given Plaintiff's unmerited refusal to comply with the Settlement Agreement, assess against Plaintiff all costs and fees incurred by Frontier in bringing this Motion.

Dated: January 26, 2015

Respectfully submitted,

/s/ _____
Sarah E. Moffett (VA Bar No. 72208)
LECLAIRRYAN, A PROFESSIONAL CORPORATION
2318 Mill Road, Suite 1100
Alexandria, Virginia 22314
Telephone: (703) 647-5930
Facsimile: (703) 647-5980
Email: sarah.moffett@leclairryan.com

- and –

Paula L. Wegman (*pro hac vice pending*)
Steven L. Boldt (*admitted pro hac vice*)
ADLER MURPHY & MCQUILLEN LLP
20 South Clark Street, Suite 2500
Chicago, Illinois 60603
Telephone: (312) 345-0700
Facsimile: (312) 345-9860
Email: sboldt@amm-law.com
Email: pwegman@amm-law.com

***Attorneys for Frontier Airlines, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 26, 2015, I served the following via U.S. Mail, postage prepaid, and via electronic case filing:

Stephen Swift, Esq.
Swift & Swift, Attorneys at Law, P.L.L.C.
21 Eisenhower Avenue
Suite 200
Alexandria, VA 22314

／s／_____
Sarah E. Moffett