# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| |
|---|
| TRANS STATES AIRLINES, INC., <br><br> Plaintiff, <br><br> v. <br><br> COMMONWEALTH AVIATION SERVICE, INC. D/B/A/ MILLION AIR, <br><br> Defendant. |

Action No. 3:08–CV–112

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff's Motion to Enforce the Settlement Agreement (Docket No. 93). After due consideration and for the reasons discussed below, this Motion is DISMISSED because this Court lacks subject matter jurisdiction.

## I. BACKGROUND

On July 21, 2008, Plaintiff Trans States Airlines ("Trans States") and Defendant Commonwealth Aviation Service, Inc. ("Commonwealth") agreed to settle the matter before this Court for $350,000. On July 23, 2008, the parties filed a Stipulation of Dismissal with Prejudice. (Pl. Ex. A.) On July 30, 2008, the Court entered an Order dismissing the case with prejudice pursuant to the Stipulation of Dismissal ("Stipulation") filed by the parties. (Pl. Ex. B.) On August 4, 2008, Trans States provided Commonwealth with a signed Full Release and Settlement Agreement document. (Pl. Ex. C.) On these facts, the parties agree.

However, the issue of timing of payment is where the parties' understanding of the terms of settlement diverge. Trans States asserts that the settlement agreed to on July 21, 2008 included an oral agreement that the payment from Commonwealth was due thirty (30) days from the date of the settlement—i.e. August 20, 2008. (Pl. Mem. in Supp. of Mot. to Enforce Settlement 1.) Defendant asserts that the Full Release and Settlement Agreement signed on August 4th was the final agreement between the parties and included no such timeline. (Def. Mem. in Opp'n to Pl. Mot. to Enforce Settlement 5.) Defendant states that it has "worked diligently to obtain the settlement funds from its insurer," and they informed Trans States that it could not issue payment until "all funds had been collected." (Id. at 2; Pl. Ex. F.) Trans States and Commonwealth communicated several times between August 26, 2008 and September 24, 2008 about when the payment was due. (Pl. Mem. in Supp. 2–3.) On September 23, 2008, Trans States notified Commonwealth by letter that if they did not receive payment by September 26, 2008, they would be forced to file the current motion in court. (Pl. Ex. E.) Defendant responded stating that they were still awaiting a payment from an insurer and could not dispense with the payment until all the funds had been collected. (Pl. Ex. F.) Defendant expressed a desire to resolve the matter shortly, "without the necessity for further motions." (Id.)

Plaintiff filed the current Motion before this Court on September 26, 2008 asking that the Court enforce the Settlement Agreement and for interest from August 20, 2008. Defendant states that they informed Plaintiff's counsel on October 2, 2008 that the check was being issued, but the check was issued to the wrong party, and a

2

few days later the check was sent to the proper party. (Def. Mem. in Opp'n 2–3.) Plaintiff asserts that by the date of their Reply memorandum, October 15, 2008, the funds had not been received. (Pl.'s Reply to Def. Resp. to Pl. Mot. to Enforce Settlement 1.)

## II. DISCUSSION

The subject matter jurisdiction of a court to enforce a settlement agreement was determined by the Supreme Court in Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994). The Court determined that the court may employ ancillary jurisdiction to enforce a settlement agreement for two reasons: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . . . and (2) to enable a court to function successfully, that is to manage its proceedings, vindicate its authority, and effectuate its decrees." Id. at 379–80. As to the first prong, the Court in Kokkonen found no jurisdiction existed because the claim that brought the original action to court was breach of agency, and the enforcement action was a breach of contract claim—two distinct actions. Id. at 380. For the second prong, the Court stated that had the parties' obligation to comply with the settlement agreement been made part of the Order, then breach of the agreement would be a violation of the Order and the Court would have ancillary jurisdiction to effectuate its decree. Id. However, in Kokkonen, the settlement agreement was in no way incorporated into the Court's Order, and the Court did not specifically retain jurisdiction over the case within the Order, therefore ancillary

3

jurisdiction was not proper. Id. at 381–82.

The Fourth Circuit employed the Kokkonen rationale in Smyth v. Rivero by requiring that "the obligation to comply with a settlement's terms must be expressly made part of a court's order for jurisdiction to enforce the settlement after dismissal of the action to exist." 282 F.3d 268, 283 (4th Cir. 2002). The Fourth Circuit stated that this rule is "adhered to strictly," id. at 283 (quoting In re Phar-Mor, Inc. Sec. Litig., 172 F.3d 270, 273 (3d Cir. 1999)), and requires that in order to retain jurisdiction, the court must "give a clear indication that it is incorporating the terms of the agreement into that order or retaining jurisdiction" in order to have jurisdiction over an enforcement action. Id.; see also Columbus-America Discovery Group v. Atl. Mut. Ins. Co., 203 F.3d 291, 299 (4th Cir. 2000) (holding that the provision included in the Order stating "[t]he Court retains jurisdiction to enforce the settlement of the parties and the prior Orders in this case" satisfied the Kokkonen requirement to maintain jurisdiction). In Smyth, the Court held that the mention of the settlement agreement in the Order did not require the parties to comply with the terms of the agreement and therefore the settlement agreement was not incorporated into the Order. Id. at 284.[1]

---

[1] Plaintiff relies on an unpublished decision from the Western District of Virginia, Payman v. Mirza, where the Court held that because the parties "properly removed to [the] court based on diversity of citizenship" there was an "independent basis for federal jurisdiction." No. 2:03CV00023, 2005 WL 1668273, *2 (W.D. Va., Jul. 18, 2005). However, the case in Kokkonen was also a state claim case that was removed from state court on the basis of diversity jurisdiction. See 511 U.S. at 376. If the Kokkonen Court intended for diversity jurisdiction to be enough to confer ancillary jurisdiction on the Court to enforce a settlement agreement, the parties in Kokkonen would have met this requirement. Furthermore, the decision in Payman is not binding, and this Court must follow Fourth Circuit and Supreme Court precedent, so

4

In the present case, the Stipulation sent by the parties did not request any specific terms to be included in the Court's Order. (Pl. Ex. A.) Moreover, the Order of Dismissal was made without mention, or integration of the settlement agreement between the parties. (Pl. Ex. B.) Because the present case presents no valid basis for ancillary jurisdiction, Plaintiff's Motion is DENIED.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Enforce Settlement is DENIED.

It is SO ORDERED.

```
                    /s/
        James R. Spencer
        Chief United States District Judge
```

ENTERED this 30th day of October 2008

---

for this reason, Plaintiff's reliance on <u>Payman</u> is misplaced.

Plaintiff also attempts to rely on the principle that courts have "inherent authority, derived from their equity power" to enforce settlement agreements. <u>Hensley v. Alcon Labs., Inc.</u>, 277 F.3d 535, 540 (4th Cir. 2002); <u>Millner v. Norfolk & W. Ry. Co.</u>, 643 F.2d 1005, 1009 (4th Cir. 1981). However, the similar doctrine of equity was proposed by the Respondent in <u>Kokkonen</u>, and there the Court found that the doctrine of maintaining jurisdiction based on equity principles was dicta and did not apply because in the case cited by Respondent, the court had "expressly reserved jurisdiction." <u>Kokkonen</u>, 511 U.S. at 379. Similarly, equity does not apply here, because this Court did not expressly reserve jurisdiction in the Dismissal Order.

5