1

1           UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF VIRGINIA
2                  ALEXANDRIA DIVISION

3   CHARITY CHIDINMA EMERONYE    )  Case 1:14-cv-01139
    SWIFT,                       )
4                                )
                   Plaintiff,    )
5                                )
         v.                      )  Alexandria, Virginia
6                                )  February 20, 2015
    FRONTIER AIRLINES, INC.,     )  9:58 a.m.
7   *et al.*,                    )
                                 )
8                  Defendants.   )
    _____)  Pages 1 - 25
9

10      TRANSCRIPT OF FRONTIER AIRLINES, INC.'S MOTION TO

11    ENFORCE THE SETTLEMENT AGREEMENT AND FOR OTHER RELIEF

12           BEFORE THE HONORABLE ANTHONY J. TRENGA

13             UNITED STATES DISTRICT COURT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25        COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES


    Rhonda  F.  Montgomery   OCR-USDC/EDVA   (703) 299-4599

```
 1   APPEARANCES:

 2   FOR THE PLAINTIFF:

 3        STEPHEN CHRISTOPHER SWIFT, ESQUIRE
          SWIFT & SWIFT
 4        2121 Eisenhower Avenue, Suite 200
          Alexandria, Virginia  22314-4688
 5        (703) 418-0000

 6   FOR THE PLAINTIFF:

 7        PAULA L. WEGMAN, ESQUIRE, PRO HAC VICE
          ADLER, MURPHY & McQUILLEN, LLP
 8        20 South Clark Street, Suite 2500
          Chicago, Illinois  60603
 9        (312) 345-0700

10        SARAH E. MOFFETT, ESQUIRE
          LeCLAIRRYAN, PC
11        2318 Mill Road, Suite 1100
          Alexandria, Virginia  22314
12        (703) 684-8007

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1            THE CLERK:  Civil Action 1:14-cv-1139,

2  *Charity Chidinma Emeronye Swift v. Frontier Airlines*,

3  *Inc., et al.*

4            Will counsel please identify themselves for

5  the record.

6            MR. SWIFT:  Stephen Christopher Swift for the

7  plaintiff, Charity Chidinma Emeronye Swift.

8            THE COURT:  Good morning.

9            MR. SWIFT:  Good morning.

10           MS. WEGMAN:  Good morning, Your Honor.  Paula

11  Wegman on behalf of Frontier Airlines.

12           THE COURT:  All right.

13           MS. MOFFETT:  Good morning, Your Honor.

14  Sarah Moffett on behalf of the defendant.

15           THE COURT:  All right.  We're here on

16  defendant's motion to enforce a settlement agreement.

17  I've reviewed the submissions.  I'd be pleased to hear

18  further from counsel if there's something you would

19  like to add.

20           Counsel.

21           MS. WEGMAN:  Good morning, Your Honor.  As

22  you know, we are here on Frontier's motion to enforce

23  the settlement.  I am Paula Wegman.  I was one of the

24  prime counsel involved in the situation.

25           Today what we need to determine is whether or

1  not we've reached a full and complete settlement and
2  whether those terms can be ascertained, and we believe
3  that they have.  The documents submitted in support of
4  our motion, even looked at objectively beyond the
5  affidavits, clearly establish that a full and complete
6  settlement of all of plaintiff's claims was reached.
7  That was confirmed in writing.  At no times were those
8  terms disputed.
9          Correspondence flowed not only between myself
10 and plaintiff's counsel but also plaintiff herself.
11 There is no question here that an agreement wasn't
12 reached.  Plaintiff concedes as such in her motion.
13 Her counsel conceded as such in his correspondence to
14 me.
15          There's no -- under the Fourth Circuit, a
16 settlement can be enforceable -- for two factors are
17 supportive.  First, is it a complete settlement of the
18 underlying litigation, and was the terms and
19 conditions -- can they be clearly determined.  Both
20 conditions have been met here.
21          Plaintiff's only excuse for noncompliance is
22 comparatively unsubstantial.  Essentially, she said she
23 had second thoughts.  After I turned to the agreement,
24 at some point later, she determined the figure wasn't
25 what she wanted.  Under the law, that's not an excuse

1  to invalidate an otherwise enforceable settlement,

2  which is what we have here.

3         As I explained in the briefing, I personally

4  met with plaintiff and her counsel to discuss and

5  resolve the case.  During the meeting, she demanded a

6  certain monetary amount to settle her case.  Plaintiff

7  was represented by her counsel and her husband the

8  entire time.  Frontier agreed to pay the amount

9  demanded in exchange for a complete dismissal of all

10 her claims and confidentiality.  Plaintiff and her

11 counsel agreed.  We shook hands.  I advised that a

12 written settlement agreement would be provided the next

13 week.

14        I sent an e-mail to plaintiff and her counsel

15 confirming the settlement agreement less than an hour

16 later.  Plaintiff did not dispute, question, or object

17 to the settlement agreement confirmation.

18        A written Release and Settlement Agreement

19 was sent to plaintiff and her counsel, as I said I

20 would, the next Monday.  The next day plaintiff's

21 counsel sent an e-mail on which his own client, his

22 wife, was CC'd asking for the addition of a signature

23 line for a Frontier agent on the written agreement.  He

24 indicated that upon receipt of a version signed by

25 Frontier plaintiff would, and I quote, do her part and

1   sign it as well.  Plaintiff did not dispute, question,

2   or object to any of the terms contained in the written

3   Release and Settlement Agreement.  They never disputed,

4   questioned, or objected to anything in the confirming

5   e-mail sent immediately after the agreement was

6   reached.

7           Frontier was amenable to the addition of a

8   signature line to the release.  We added it and

9   obtained the signature that was needed.

10          THE COURT:  I've read all of that.

11          MS. WEGMAN:  All right.  Your Honor, simply

12  put, the agreement should be enforced.  Plaintiff

13  doesn't dispute that it was reached.  Rather, her

14  excuse is that she was in an emotional stupor when she

15  negotiated and agreed to the agreement.  She claimed

16  that she was somehow taken advantage of due to her

17  emotional state.

18          However, if that was the case, certainly her

19  lawyer, who was there the entire time and who is also

20  her husband, would have intervened.  In reality,

21  plaintiff has just decided that in hindsight she wants

22  more money than was already agreed to.

23          The Fourth Circuit has held that having

24  second thoughts about the results of a valid settlement

25  agreement does not justify setting aside an otherwise

```
 1  valid agreement.  The settlement agreement here should
 2  be enforced, and the case should be dismissed.
 3          Thank you.
 4          THE COURT:  All right.  Thank you.
 5          Mr. Swift.
 6          MR. SWIFT:  Okay.  I --
 7          THE COURT:  Tell me what material factual
 8  disputes there are, if you think there are any, with
 9  respect to the agreement that was reached by the end of
10  the meeting on January 9.
11          MR. SWIFT:  Well, in the first place, our
12  understanding was it was not intended to be a final
13  settlement agreement.
14          THE COURT:  Did anybody say anything that
15  would have reflected that intention?
16          MR. SWIFT:  Well, you know, the agreement
17  itself implies that it's not final until it's signed.
18          THE COURT:  Well, what was said during the
19  meeting on January 9 that would have conveyed
20  objectively an understanding that what was agreed to
21  was contingent upon a final written settlement
22  agreement?
23          MR. SWIFT:  Well, for -- well, I think it was
24  more what was not said because, one thing, in the
25  agreement that was sent to us, it listed a long list of
```

1  parties who were not -- who were to be released who

2  were not mentioned during the discussion.

3            Another thing, my wife asked for an apology

4  from Frontier Airlines and that -- no agreement was

5  reached on that.  So it was not --

6            THE COURT:  Well, it was clear that Frontier

7  was not prepared to give that except as through what

8  the lawyer had already said, correct?  I mean, it was

9  specifically said that Frontier was not prepared to do

10 that.  Is that factually correct?

11           MR. SWIFT:  Well, my --

12           MRS. SWIFT:  Yes.

13           MR. SWIFT:  Yes.  But my wife had said,

14 "We'll see," meaning we'll see what you say when we get

15 your agreement, when we get the written agreement, if

16 we are satisfied with what you're offering in the

17 written agreement.

18           THE COURT:  She said that to whom?

19           MR. SWIFT:  She said that during -- to

20 everyone who was present at the meeting.

21           THE COURT:  Where is that in her affidavit?

22 I didn't understand that was said, that there was any

23 qualification with respect to the settlement that had

24 been reached on January 9.  I know there were other

25 discussions afterwards.

1          MR. SWIFT:  I think -- as I recall, somewhere
2     in the affidavit she said, "We'll see," when they were
3     discussing the apology.
4          MS. MOFFETT:  Your Honor, it's paragraph 23.
5          THE COURT:  So this was after the handshake,
6     and then there was this further discussion; is that
7     correct?
8          MRS. SWIFT:  Yes.
9          MR. SWIFT:  Yeah.
10          THE COURT:  All right.
11          MR. SWIFT:  So, you know, our position is
12     there was not a complete agreement.  Therefore, it's
13     not enforceable because, one, there is a disagreement
14     over how many parties are going to be included in the
15     release.  We never heard of -- during the discussion of
16     any parties other than Frontier Airlines, Incorporated,
17     itself.  Secondly, there was no mention of an apology
18     in the release.
19          Furthermore, I would like to point out that
20     the signature -- when they signed it, it was only
21     signed by counsel for Frontier Airlines, Incorporated,
22     not by an officer of Frontier Airlines, Incorporated,
23     which is what we wanted.
24          At any rate, when we -- we got these, the
25     release, on -- by e-mail on Monday.  That night I said

1  we -- we noticed there was no signature line.  We would

2  want this signed by both parties.

3           Then the next morning I e-mailed them to say

4  that the agreement was inadequate.  So if my e-mail on

5  the night of Monday -- let me put it this way:  There

6  was not a complete agreement.  At best, my e-mail on

7  the night -- Monday would be a counteroffer.  And the

8  next morning I revoked the counteroffer before they

9  accepted it later in the week.  So there was never a

10 meeting of the minds for a complete settlement

11 agreement.

12           THE COURT:  All right.  Anything else?

13           MR. SWIFT:  I would beg the Court's

14 indulgence to read some remarks I prepared.

15           THE COURT:  All right.  Go ahead.

16           MR. SWIFT:  Your Honor, Plaintiff Charity

17 Swift opposes Defendant Frontier Airlines' motion to

18 enforce defendant's alleged settlement agreement

19 because no binding and enforceable agreement was

20 reached for several reasons:

21           One, there was no complete settlement

22 agreement.  A settlement agreement is enforceable only

23 if it is a complete settlement of all disputed issues

24 between the parties.  As the Fourth Circuit said in

25 *Hensley v. Alcon Laboratories*, Because exercise of the

1  authority to enforce settlement agreements depends on

2  the parties' agreement to a complete settlement, the

3  court cannot enforce a settlement until it concludes

4  that a complete agreement has been reached and

5  determines the terms and conditions of that agreement.

6          In *Moore v. Beaufort County*, the court found

7  that there was a complete settlement agreement where

8  the plaintiff's attorney signed a document drafted by

9  defendant's attorney.  In the present case, no one has

10 signed a document drafted by the other side.

11         Two, there was no meeting of the minds.  The

12 Court should find that there was no contract for a

13 settlement agreement because there was no meeting of

14 the minds between Mrs. Swift and Frontier Airlines, nor

15 any complete settlement agreement.

16         After the meeting between Mrs. Swift, her

17 counsel, and counsel for Frontier Airlines on Friday,

18 January 9, 2015, the Confidential Full Release and

19 Settlement Agreement that counsel for Frontier Airlines

20 e-mailed on Monday, January 12, 2015, added provisions

21 that had not been discussed in the meeting, including a

22 long list of parties to be released from all liability.

23 This document did not include an apology from Frontier

24 Airlines, which Mrs. Swift had said she wanted at the

25 meeting.

1          At no time whatsoever during the meeting did

2   anyone, including counsel for Frontier Airlines,

3   expressly mention, imply, or allude to Republic Airways

4   Holdings, Incorporated; Indigo Partners, LLC; Falcon

5   Acquisition Group, Incorporated; Frontier Airlines

6   Holdings, Incorporated; Air World Travel & Training

7   Corp.; Worldwide Flight Services, Incorporated; Allianz

8   Global Corporate and Specialty; Allianz Global Risks US

9   Insurance Company; and Allianz Aviation Managers, LLC,

10  as part of the discussion or are they in any way part

11  of the present lawsuit.

12          As noted in our affidavit attached to her

13  opposition to the present motion, Mrs. Swift has no

14  suit pending against any of these institutions;

15  although, she may have an independent legal cause of

16  action against and the right to sue some of them should

17  she decide to do so and reserves the right to do so.

18  She has not even heard the names of most of them, nor

19  did she know of their existence until, to her surprise,

20  she saw their names in defendant's documents.  She

21  certainly did not discuss nor have them in

22  contemplation during her discussion with counsel for

23  Frontier Airlines as it was humanly impossible for her

24  to discuss release of institutions she did not sue or

25  know existed prior to or during an apparent settlement

1   discussion or afterwards until she began reading

2   defendant's documents.

3          Three, plaintiff's counsel's e-mail of

4   January 13 was a counteroffer that was properly revoked

5   before acceptance by defendants.  There was no complete

6   settlement agreement despite my e-mailed request on the

7   night of Tuesday, January 13, 2015, to add a signature

8   line for Frontier Airlines because that was a

9   counteroffer to make a contract.  That counteroffer was

10  revoked by my e-mail the next morning because it was

11  accepted by Frontier Airlines counsel's e-mail of

12  Friday, January 16, 2015, adding a counsel signature.

13  So no contract was formed.

14          Furthermore, the signature of counsel for

15  Frontier Airlines, rather than that of a corporate

16  officer, was not the requisite signature and, as such,

17  was inadequate.

18          Four, by voiding the confidentiality of the

19  release itself, defendant made it impossible to carry

20  out.  Assuming for the sake of argument that there was

21  a contract, paragraph H of the Confidential Full

22  Release and Settlement Agreement provides, Releasor and

23  the Released Parties further agree that this

24  Confidential Full Release and Settlement Agreement

25  shall be confidential and that they will not disclose

1   the content of any terms of this Confidential Full

2   Release and Settlement Agreement to anyone except as

3   necessary for tax reporting purposes or as otherwise

4   required by law.

5          Thus, it is not merely the redacted dollar

6   amount that was supposed to be kept confidential but

7   the entire agreement.  By not redacting any other terms

8   and filing it and publishing it on PACER for all the

9   world to see, not under seal, and with no protective

10  order in place, Frontier Airlines has made the

11  agreement impossible to carry out.  Frontier Airlines

12  was not required by law to publish the document on

13  PACER to enforce it.  They could have filed it under

14  seal.

15        Five, forcing plaintiff to sign the agreement

16  against her will means the Court is ordering plaintiff

17  to commit perjury, which is against public policy.

18        THE COURT:  I've read that in your previous

19  submissions.

20        MR. SWIFT:  Okay.  Well -- okay.  I'll skip

21  to the next point since that's already in the record.

22        THE COURT:  All right.

23        MR. SWIFT:  Six, this Court has no

24  jurisdiction because there is no independent basis for

25  it.

1          THE COURT:  Right.  That was covered in your

2   submission as well.

3          MR. SWIFT:  All right.  Well, okay.  I'll

4   skip -- oh, I do have one response to something in the

5   reply brief to make.

6          THE COURT:  All right.

7          MR. SWIFT:  In its reply brief, Frontier

8   Airlines argues that *Kokkonen* and similar cases are

9   irrelevant to the present case because in *Kokkonen* the

10  district court had dismissed the case before a motion

11  was filed to enforce a settlement agreement, but the

12  Supreme Court did not state in *Kokkonen* that the

13  district court lost jurisdiction because it had

14  dismissed the case.  Rather than merely relying on the

15  facts of the case, the Supreme Court was making a

16  general ruling about the limits of federal

17  jurisdiction.

18          My seventh point is the plaintiff has not

19  waived her right to jury trial and a summary

20  disposition is improper.

21          THE COURT:  All right.

22          MR. SWIFT:  Assuming for the sake of argument

23  that the U.S. District Court has jurisdiction, a proper

24  demand for a jury trial has been made, and there is a

25  disputed issue of material fact as to whether or not

1  there is a settlement agreement.  So the plaintiff is

2  entitled to have the issue decided by a jury, rather

3  than by the Court in summary judgment or the

4  equivalent.

5          As the Fourth Circuit stated *Millner v.*

6  *Norfolk & Western Railway Company*, plaintiff has made

7  timely demand for jury trial in --

8              THE COURT:  That was covered also.

9              MR. SWIFT:  All right.  I'll skip to the next

10 point.  This is the last point:  Eight, plaintiff

11 demands attorney's fees and costs because defendant

12 acted in bad faith.  While the American Rule provides

13 that each party should generally --

14             THE COURT:  That was covered as well.

15             MR. SWIFT:  Okay.  I do have something to add

16 to what I said earlier, though.

17             THE COURT:  All right.

18             MR. SWIFT:  The Fourth Circuit said under its

19 inherent power the district court has authority to

20 shift attorney's fees but, again, only in the

21 extraordinary circumstances where bad faith or abuse

22 can form a basis for doing so.  There are such

23 extraordinary circumstances in the present case.  For

24 instance, counsel for Frontier Airlines knew that

25 Mrs. Swift was overwhelmed emotionally during the

1　discussion -- because Mrs. Swift told her several times

2　that she was emotional and feeling like she was about

3　to cry -- but unreasonably pushed for an agreement that

4　plaintiff would not have agreed to but for her

5　emotional state that she was in during the discussion

6　and is now trying to enforce the alleged agreement

7　despite its own requirement that it be freely signed.

8　　　　While Mrs. Swift is a lawyer, she is also a

9　human, and being in an emotional state has nothing to

10　do with intellect.  And no one in an emotional state

11　could fairly or reasonably be required to have the

12　requisite capacity to reach a valid settlement

13　agreement.  While Mrs. Swift is a lawyer, she was a

14　victim of an unmerited discrimination that has

15　continued to cause her emotional distress.

16　　　　In conclusion, Mrs. Swift respectfully

17　requests the Court to enter an order denying the

18　opposed motion because there has been no meeting of the

19　minds required for a valid settlement agreement.  It is

20　impossible to carry out the alleged settlement

21　agreement.  And by its terms, it cannot be signed

22　involuntarily.  The Court does not have jurisdiction

23　and should not decide the matter without a jury.

24　　　　Plaintiff also asks the Court to assess

25　against Defendant Frontier Airlines, Incorporated, all

1  costs and fees incurred by her in opposing said motion

2  because it was made in bad faith.

3          THE COURT:  All right.  Thank you.

4          Anything further?

5          MS. WEGMAN:  Your Honor, just a couple of

6  quick points.  I won't repeat what was already stated

7  in the reply.  We respond to all of those arguments.

8          As you can tell from the affidavit that was

9  submitted, an apology from Frontier was clearly not a

10  part of the agreement.  The settlement agreement was

11  reached and consummated prior to that comment by

12  Plaintiff Swift.

13          The purpose of the agreement was to settle

14  the entire litigation.  It was a complete and entire

15  settlement of the litigation.  Any of the additional

16  names that are listed in the release are primarily

17  Frontier Airlines' parent and sister corporations

18  disclosed in their corporate disclosure.  There is

19  nothing nefarious or of surprise here.  The purpose was

20  to settle the litigation in its entirety so that

21  plaintiff did not choose to come back and perhaps sue

22  Frontier's parent corporation.

23          The settlement resolved her claims.  The

24  objective documents establish that.

25          None of these objections were raised below.

1  These claims that the release wasn't reviewed, these

2  comments or terms weren't seen, that's not borne out by

3  these documents.  Plaintiff's counsel must've looked at

4  that release in order to notice he wanted an additional

5  signature line added.  In order to even determine that,

6  he must've looked at the release.  Plaintiff received

7  all of these correspondence, all of these documents.

8  At no time were any of these issues raised.

9          Again, this is not a proper reason to

10 overturn a complete and valid settlement.  This is

11 merely plaintiff having second thoughts.

12          THE COURT:  All right.  Thank you.

13          This matter is before the Court on Defendant

14 Frontier Airlines' motion to enforce the settlement

15 agreement and for other relief.  Frontier Airlines

16 claims that it entered into a settlement agreement with

17 the plaintiff as to all issues and that the plaintiff

18 subsequently breached that agreement when she refused

19 to dismiss her claims in exchange for the agreed upon

20 amount.

21          Based on the submissions that have been

22 provided to the Court, the Court concludes that the

23 material facts are not in dispute.  Following a hearing

24 before Judge Davis on January 9, 2015, the parties

25 adjourned to the offices of defendant's counsel where

1    there occurred settlement discussions.  Parties are in

2    agreement that during those discussions, the plaintiff

3    offered to settle for a certain amount.  Frontier

4    responded that Frontier would pay that amount in

5    exchange for dismissal of all of plaintiff's claims

6    against Frontier and a confidentiality as to the

7    settlement.  Plaintiff and her counsel agreed and the

8    meeting ended with the plaintiff and counsel shaking

9    hands in consummation of the agreement.  The

10   defendant's counsel confirmed the terms of the

11   settlement agreement that same day by e-mail dated

12   January 9 at 12:31 p.m.

13          On Monday, January 12, at 4:20 p.m.,

14   defendant's counsel forwarded a written Release and

15   Settlement Agreement.  On Tuesday, January 13, at

16   5:46 p.m., plaintiff's counsel requested by e-mail that

17   a line be added to the settlement agreement for

18   Frontier Airlines' signature, as well as plaintiff's.

19          Then on Wednesday, January 14, at 10:36 a.m.

20   plaintiff's counsel advised defendant's counsel by

21   e-mail that, quote, I have now had the time to fully

22   and properly evaluate her case after Judge Davis'

23   decision to allow her to partly amend her complaint.

24   On the basis of my review, I have advised my client

25   that she should not go ahead with the agreement at this

1  time because the settlement is not fair and not in her

2  best interest, and she has accepted my advice.   In view

3  of this, we are not prepared to settle at this time for

4  the amount previously agreed to, close quote.

5          On Friday, January 16, at 2:02 p.m.,

6  defendant's counsel forwarded the previously tendered

7  written agreement with the previously requested line

8  for Frontier's signature which had been signed on

9  behalf of Frontier.   The plaintiff refused to sign the

10 agreement, and this motion followed.

11         Plaintiff first claims that this Court does

12 not have jurisdiction over the subject matter of the

13 motion because it has the breach of contract action

14 that is governed by state law over which state courts

15 have jurisdiction except in cases arising under the

16 federal court's diversity jurisdiction or where a

17 federal court has reserved jurisdiction to enforce a

18 settlement.

19         Alternatively, she argues that there are

20 disputed issues of material fact that must be decided

21 by a jury in order to determine whether there is an

22 enforceable settlement agreement.

23         Third, plaintiff argues that there is no

24 enforceable contract because there was no meeting of

25 the minds between the plaintiff and the defendant or

1  any completed written settlement agreement.

2           Finally, plaintiff claims that it is

3  impossible to carry out the settlement agreement

4  according to its terms because the confidentiality

5  called for under the agreement has been breached

6  through defendant's filing of this motion.

7           Based on the record before the Court, the

8  Court finds and concludes that there are no material

9  facts in dispute and that the parties entered into a

10  complete settlement during their meeting on January 9,

11  the terms of which were confirmed by the defendant's

12  e-mail dated January 9.

13           Those terms were clear.  In exchange for the

14  agreed upon amount, defendant would dismiss all her

15  claims against Frontier Airlines, Inc., and agree to

16  confidentiality as to the settlement agreement.

17           Any subsequent disputes that arose either as

18  to the form of the written settlement agreement or the

19  scope of any releases or plaintiff's willingness to

20  sign the written agreement did not affect the finality

21  and enforceability of the oral settlement agreement

22  that had been consummated on January 9.

23           Likewise, plaintiff's comments after the

24  consummation of that agreement that she was still

25  hopeful or expected or wanted an apology does not

1  vitiate the finality, enforceability of the previously

2  reached oral settlement agreement.  That term was

3  specifically proposed and rejected before the parties,

4  in fact, reached a complete agreement on the terms of

5  that oral agreement.

6          With respect to plaintiff's defenses raised

7  as to the enforceability of the settlement agreement,

8  the Court concludes that none has any merit.  This

9  Court clearly has subject matter jurisdiction to

10 enforce the settlement of the pending litigation before

11 it.  The cases relied upon by the plaintiff relate only

12 to those instances where the parties attempt to enforce

13 a settlement with respect to a previously dismissed

14 action but did not reserve its jurisdiction to enforce

15 a settlement.  Courts are in agreement that they have

16 the inherent authority during the pendency of an action

17 to enforce settlement agreements to resolve pending

18 litigation as happened in this case.

19         Second, there were no material facts in

20 dispute.  For that reason, there is no need to have an

21 evidentiary hearing, which in any event would not

22 involve a jury.

23         Third, as the Court has concluded, there was,

24 in fact, a meeting of the minds as reflected in the

25 objective manifestations of intent and consent that

1   occurred at the meeting on January 9.  In that regard,

2   there was no discussion that the oral settlement was

3   contingent upon the parties executing a formal written

4   settlement agreement.  And the plaintiff's unexpressed

5   subjective intentions not to be bound in the absence of

6   her executing such a written agreement does not affect

7   the enforceability of the fully consummated oral

8   agreement that was reached on January 9.

9           Finally, the defendant's filing of this

10  motion did not constitute a breach of the agreement or

11  the confidentiality provision of that oral agreement

12  since the amount of the settlement remains undisclosed.

13          For all of these reasons, the Court concludes

14  that the parties have reached a binding, complete

15  settlement agreement.  For that reason, this case will

16  be dismissed as settled.  The Court will issue an

17  order.

18          Is there anything further?

19          MS. WEGMAN:  Your Honor, we did have one

20  additional request for our fees.

21          THE COURT:  Right.  The Court is going to

22  deny fees from both parties.

23          MS. WEGMAN:  Nothing further.

24          THE COURT:  All right.  Anything further?

25      (No response.)

1          THE COURT:  All right.  Counsel is excused.

2    The Court will issue an order.

3          MS. MOFFETT:  Thank you, Your Honor.

4          -----------------------------------
                    Time:  10:26 a.m.
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21
         I certify that the foregoing is a true and
22
     accurate transcription of my stenographic notes.
23

24
                                    /s/
25                       _____
                         Rhonda F. Montgomery, CCR, RPR


     R h o n d a   F .   M o n t g o m e r y     O C R – U S D C / E D V A     ( 7 0 3 )   2 9 9 – 4 5 9 9